**A. Norrie WAKE, Petitioner,**

**v.**

**Honorable George E. BARKER, Judge, Fayette Circuit Court, Lexington, Kentucky, Respondent.**

Court of Appeals of Kentucky.

Oct. 11, 1974.

A. Norrie Wake, Wake & Vest, Lexington, for petitioner.

George E. Barker, pro se.

Patric H. Molloy, Commonwealth's Atty., 22nd Judicial District, John M. Famularo, Asst. Commonwealth's Atty., Lexington, amicus curiae.

CULLEN, Commissioner.

A. Norrie Wake, one of the Public Defenders in Fayette County was appointed by the respondent circuit judge to represent one James Harvey Hendron in his defense under an indictment charging three counts of dwelling-house breaking, one count of taking and operating an automobile without the owner's consent, and one count of being an habitual criminal. The order of appointment prescribed restrictions on Wake's control of the defense, giving Hendron the right to participate in decisions as to trial tactics, with the judge to make the final decision in instances where Wake and Hendron disagreed. The record of the hearing at which the appointment was made shows that Hendron did not want counsel, or at least wanted to be in full charge of his own defense with counsel available to do his bidding.

Both Hendron and Wake expressed dissatisfaction at the hearing with the judge's order, and indicated their desire to obtain a review in this court. However, Wake alone has sought that review, by way of a petition for an order of prohibition against enforcement of the order of appointment of counsel; his petition seeks also that this court establish standards for the direction of the Bench and Bar in cases where defendants in criminal prosecutions desire to proceed pro se.

The defendant, Hendron, is a man with considerable experience before the bar of criminal justice. He presently is serving a 16-year sentence imposed in 1966 on a plea of guilty to charges of malicious shooting and armed robbery. Not long before the arraignment on the current indictment he

went through three trials on other charges, culminating in a conviction of housebreaking.

When he appeared for arraignment on the current indictment, Hendron was represented by George Combs, another of the Fayette County Public Defenders. Combs asked leave to withdraw as counsel, on the ground that Hendron "does not want any public defender to represent him; certainly not me, * * * he wants our help, however * * * he wants to conduct his own defense, act as his own attorney, and use us as he sees fit." Combs' view was that an accused has the right to make an intelligent waiver of the right to counsel, "but I think that once he has made that intelligent waiver, then he must make it all the way. He must accept the full responsibility to act as his own counsel and may not retain counsel for whatever purposes he sees fit, which seems to give him a license to say thereafter that whatever went wrong in the trial can be blamed on his appointed counsel."

The court then examined Hendron, under oath, as to his position in the matter. Hendron said:

"I agree to allow him to withdraw, your Honor, and as far as representing myself, that's what I want to do. * * * I do intend to represent myself."

When asked by the court whether he felt himself competent to comply with the rules of court concerning the presentation of evidence and the making of proper motions to protect his interests, Hendron replied that he did, and that he felt competent based on his reading law at the penitentiary and his experience in former trials. However, when asked whether he wanted "to waive any of your rights by reason of your own ignorance of the law," his answer was, "No, sir, I do not." The court then explained to Hendron that Combs' desire to withdraw was based on "His objection that you want to run the entire show," and Hendron's reply was, "That's correct."

Later in the discussion the judge stated his view that Hendron was not *capable*, by reason of lack of legal training, to represent himself adequately, and therefore counsel should be appointed for him but with Hendron to have a voice in the decision of trial tactics, the court to make the decision in case of disagreement. Hendron then asked: "What if I waive my right to counsel? Then can I represent myself?" When the judge indicated he could not fairly permit that to be done, Hendron said: "Well, I won't come to court with Mr. Combs."

The judge then stated that he would appoint Wake in place of Combs. Wake, upon arriving in court and being informed of the conditions attached to the representation, demurred to being appointed on those conditions. The judge thereupon suggested that since neither Hendron nor Wake liked the appointment, they or either of them might request an order of prohibition from this court. Hendron stated that he wanted to "go to the Court of Appeals." However, as hereinbefore noted, he did not take that step.

Although, as noted, the proceeding in this court has been brought by the public defender rather than by the defendant, the case has been argued from the standpoint of the right of the court to force counsel upon the defendant, rather than the power of the court to compel the public defender to provide a limited form of assistance to the defendant. Under our conception of the issue, however, it makes no difference which standpoint is used. Our analysis convinces us that the issue is two-fold: First, does a defendant in a criminal prosecution, if he makes the choice intelligently, competently, understandingly, and knowingly, have the right to defend himself without counsel being in any way associated with him? Second, may a defendant make a qualified waiver of counsel under which he will receive assistance of counsel only to the specifically limited extent he specifies in his waiver? We believe the record establishes that whatever waiver

Hendron made, it was done intelligently, competently, understandingly and knowingly, so we do not have any issue in that regard. However, the record is not clear whether Hendron desired to make an unqualified waiver, rejecting all association of counsel, or wished to have assistance of counsel on a specifically limited basis. That is why we consider that both of the issues above defined are presented.

If the answers to the two issues are in the affirmative, the order of the respondent trial judge was erroneous, because it neither allowed Hendron to proceed without any association of counsel nor supplied him with counsel restricted to the services specified in a limited waiver.

Collateral to the two direct issues is the question of the power of the court to designate standby counsel when there is reasonable ground to believe that the accused in undertaking to conduct his own defense without counsel will refuse to observe the requirements for an orderly trial. That question will be discussed in the latter part of this opinion.

■■ Our conclusion on the first issue is that an accused who has made a valid waiver of counsel has a right, if his waiver so indicates, to proceed to trial without counsel being in any way associated with him. It is true that Section 11 of the Kentucky Constitution guarantees to a defendant the right to be heard "by himself *and* counsel" (our emphasis), but in view of the historical background of the constitutional guarantees of the right to counsel we think there is no valid basis for interpreting those words as meaning that the only right guaranteed is to appear *with* counsel.

No one contends that an accused must be capable of adequately representing himself in order to make a valid waiver of counsel. The question is whether a trial court, on the ground that an accused is not capable of representing himself adequately, can compel him to accept association of counsel in his defense.

In Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268, (1942), the court had these things to say on the question here in issue:

"The right to assistance of counsel *and the correlative right to dispense with a lawyer's help* are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. * * * the Constitution does not force a lawyer upon a defendant. * * * (our emphasis)

* * * * * *

" * * * What were contrived as protections for the accused should not be turned into fetters. * * * "

" * * * When the administration of the criminal law in the federal courts is hedged about as it is by the Constitutional safeguards for the protection of an accused, to deny him in the exercise of his free choice the right to dispense with some of those safeguards * * * is to imprison a man in his privileges and call it the Constitution. * * * "

In the same vein, we quote from United States v. Dougherty, 154 U.S.App.D.C. 76, 473 F.2d 1113 (1972):

"However, a salient aspect of the pro se right, in our view, is directed to considerations distinct from the objective of achieving what would be the best result in the litigation from a lawyer's point of view. As the Supreme Court said in Adams v. United States ex rel. McCann, supra, 317 U.S. at 279, 63 S.Ct. at 241, the 'right to dispense with a lawyer's help . . . . rest(s) on considerations that go to the substance of an accused's position before the law.' It is designed to safeguard the dignity and autonomy of those whose circumstances or activities have thrust them involuntarily into the criminal process. An accused has a fundamental right to confront his accusers and his 'country,' to

present himself and his position to the jury not merely as a witness or through a 'mouthpiece,' but as a man on trial who elects to plead his own cause. He is not obliged to seek what counsel would record as a victory but what he sees as tantamount to condemnation or doubt rather than vindication. A defendant has the moral right to stand alone in his hour of trial. The denial of that right is not to be redeemed through the prior estimate of someone else that the practical position of the defendant will be enhanced through representation by another, or the subsequent conclusion that defendant's practical position has not been disadvantaged.

"In guaranteeing counsel for the accused, the Sixth Amendment conferred a right for the benefit of the accused. As implemented by Congress, this right is not an imperative requirement that may be thrust upon him when in his judgment, as a person without impaired mental capacity, it is against his interest. Even if the defendant will likely lose the case anyway, he has the right—as he suffers whatever consequences there may be—to the knowledge that it was the claim that he put forward that was considered and rejected, and to the knowledge that in our free society, devoted to the ideal of individual worth, he was not deprived of his free will to make his own choice, in his hour of trial, to handle his own case.

"In the case at bar defendants believed they would be vindicated by their peers by presenting their positions without law-trained counsel as intermediary. They may or may not be right about the relative effectiveness of a lawyer's presentation of their case. Ordinarily representation by an attorney has structure and clarity that enables a jury to better understand defendants' positions. Presentation of a case pro se will often be artless and confusing. Yet the normal disadvantage of confusion may be offset by the enhanced intensity and appearance of greater sincerity of a defendant's presentation."

We are not unaware of the holdings of the California courts, exemplified by People v. Sharp, 7 Cal.3d 448, 103 Cal.Rptr. 233, 499 P.2d 489 (1972), expressing a different view, but we do not find them persuasive. For a review of the authorities on the question, we refer to the Annotation, Right of Defendant in Criminal Case to Conduct Defense in Person, or to Participate with Counsel, 77 A.L.R.2d 1233.

■ As to the second issue, it is our conclusion that an accused may make a limited waiver of counsel, specifying the extent of services he desires, and he then is entitled to counsel whose duty will be confined to rendering the specified kind of services (within, of course, the normal scope of counsel services). We think that this is embraced within the right-to-counsel and equal-protection provisions of the federal and state constitutions. If the accused desires to have counsel available only for the purpose of consultation during the trial, why should he not be entitled to that? We recognize that such kinds of limitations on an attorney's function may create situations in which it will be necessary or desirable that a record be made to guard against future claims of ineffective assistance of counsel in regard to what advice was sought and what was given, but we do not believe that this would constitute an insurmountable obstacle.

■ We believe that the public defenders' obligations to defend the indigent may properly be considered to embrace the duty to furnish limited representation of the kind under discussion.

■ As hereinbefore noted, there is a collateral question of the power of the trial court to designate standby counsel when there is reasonable ground to believe that the accused in undertaking to conduct his

own defense will act in a manner so disorderly, disruptive or disrespectful of the court that the trial cannot be carried on under those conditions. We think it is inherent in the rationale of Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353, that such power be possessed by the trial judge. See the dissenting opinion of Chief Justice Burger in Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L. Ed.2d 532. See also People v. Burson, 11 Ill.2d 360, 143 N.E.2d 239; Loomis v. State, 78 Ga.App. 153, 51 S.E.2d 13. It follows that in the event the accused has entered upon the trial with assistance of counsel on a specified limited basis, that counsel may subsequently be required by the trial court to take such charge of the defense as may be required by reason of the disorderly, disruptive or disrespectful conduct of the accused.

We conclude that the respondent trial judge erred in ordering the petitioner public defender to render services in Hendron's defense of a character that Hendron clearly did not want. An order will issue prohibiting the respondent from enforcing his order of appointment of counsel, and directing that he conduct further proceedings designed to determine whether Hendron desires to conduct his defense without counsel being in any way associated with him (in which case he shall be allowed so to proceed, subject to the court's power to appoint standby counsel if it reasonably appears it will be necessary for an orderly trial), or whether he desires to have assistance of counsel on a specified limited basis (in which event the public defender's office will provide services on that basis, subject to extension by direction of the court in case of disorderly, disruptive or disrespectful conduct of the accused). Of course the selection of which public defender shall provide the services is a matter for that office.

All concur.