COMMONWEALTH of Kentucky,
Appellant,

v.

Gregory A. BERRY, Appellee,

and

Gregory A. Berry, Appellant,

v.

Commonwealth Of Kentucky, Appellee.

No. 2003–SC–0357–DG,
2004–SC–0231–DG.

Supreme Court of Kentucky.

May 19, 2005.

As Modified on Denial Rehearing
Feb. 23, 2006.

Gregory D. Stumbo, Attorney General, Louis F. Mathias, Jr., Office of the Attorney General, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Commonwealth.

Timothy G. Arnold, Department of Public Advocacy, Frankfort, Counsel for Gregory A. Berry.

Opinion of the Court by Justice GRAVES.

### I. Facts and Procedural History

Appellant, Gregory A. Berry, was convicted of second degree assault and being a persistent felony offender (PFO) in the first degree. The trial court entered judgment in accordance with the jury verdict and imposed the jury-recommended minimum sentence of ten years. Berry's conviction stemmed from an altercation with his former in-laws, Howard and Elaine McGregor. Berry's ex-wife, Kimberly Berry, was incarcerated at the time of the altercation. Most of her belongings remained in the home where Berry was living. Kimberly gave her mother a power of attorney to collect her property from the home. The McGregors arrived at Berry's home on February 5, 2000, around 9:00 a.m. to retrieve Kimberly's property because Berry was preparing to move.

An altercation ensued after Mr. McGregor raised the issue of Berry's providing financial support for his and Kimberly's four children. Berry claims that after this discussion, Ms. McGregor called him a drug addict and a liar, picked up one of his golf clubs and began wildly swinging it. Conversely, the McGregors both testified that they were attempting to leave the house and Berry shoved Ms. McGregor three times, sending her to the floor with the last shove. She testified that when she fell, she grabbed a golf club that was lying beside her. Berry grabbed the other end of the club and jerked her up with it, at which point Mr. McGregor attempted to intervene. By the McGregors' account, Berry hit Mr. McGregor repeatedly with the golf club until he fell to the floor. By Berry's own admission, he shoved the head of the golf club into Mr. McGregor's face three times and hit him with his fist three times, at which point Mr. McGregor fell to the floor. Ultimately, the McGregors left

the residence and went to the emergency room where Mr. McGregor was treated for head injuries, cuts and contusions.

A grand jury indicted Berry on April 18, 2000, on charges of assault in the second degree. Prior to a jury being sworn, the Commonwealth dismissed the indictment and a grand jury re-indicted Berry on February 13, 2001. Berry proceeded *pro se* and a jury convicted him of second degree assault and as a PFO in the first degree. He received the minimum sentence of ten years imprisonment.

Berry appealed his conviction alleging violations of double jeopardy and right to counsel. He also attacked the trial court's instructions to the jury. The Court of Appeals reversed his conviction, finding merit to his right to counsel claim. We granted the Commonwealth's petition for discretionary review. For the following reasons, we reverse the Court of Appeals' decision and reinstate Berry's conviction and sentence in accordance with the trial court's judgment.

We must examine, *inter alia,* two constitutional rights in juxtaposition: 1) the right to counsel and 2) the right to self-representation. In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court held that states cannot force counsel upon a defendant, recognizing the right to self-representation as a constitutional right. We have long recognized a defendant's constitutional right to counsel. We also recognize hybrid representation, or a defendant's ability to proceed *pro se* with standby counsel, controlling counsel's role in the litigation. The Constitution guarantees a defendant the right to choose which method he will use to present his defense. *Wake v. Barker,* 514 S.W.2d 692 (Ky.1974). However, a defendant may not use the availability of these alternate methods as a tool to place the trial court in a proverbial

"catch 22" situation. That is, a defendant may not insist on using one method to present his defense and then, on appeal, claim a violation of his Constitutional right to utilize a different method.

## II. Double Jeopardy

■ KRS § 508.020(1) provides:

(1) A person is guilty of assault in the second degree when:

    (a) He intentionally causes serious physical injury to another person; or

    (b) He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or

    (c) He wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.'

The initial indictment alleged that Berry intentionally caused serious physical injury, but did not mention the use of a dangerous instrument or deadly weapon. However, the Commonwealth raised the issue of Berry's use of the golf club as a dangerous instrument during *voir dire*. This prompted a conference in chambers, during which the Commonwealth dismissed the indictment. The Commonwealth sought re-indictment under KRS 508.020 without restriction. On February 13, 2001, a grand jury, again, indicted Berry.

The Court of Appeals rejected Berry's claim that the second indictment subjected him to double jeopardy. It correctly found that the dismissal of the first indictment was voluntary and therefore without prejudice under CR 41.01. Dismissal was prior to the swearing of the first witness; therefore jeopardy had not attached. KRS 505.030(4); *Commonwealth v. Lewis*, 548 S.W.2d 509 (Ky.1977).

## III. Right to Counsel

■ A defendant's choice to represent himself must be competent and intelligent. *Faretta*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. Berry argued, and the appellate court agreed, that he did not knowingly and intelligently waive his right to counsel. In *Faretta, supra*, the United States Supreme Court explained:

When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Id.* at 835, 95 S.Ct. 2525 (citations omitted).

■ We must, initially, answer whether Berry's request to represent himself was unequivocal. *Moore v. Commonwealth*, 634 S.W.2d 426 (Ky.1982). Then, we must determine whether Berry made his choice to represent himself "with eyes wide open." The purpose of the "knowing and voluntary" inquiry is to make certain that Berry understood the significance and consequences of his decision and to ensure that it was uncoerced. *Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).

The trial court engaged Berry in the following colloquy in chambers prior to trial:

COURT: The court made a determination earlier that you were not qualified for public defender appointment because

of your income. Has anything changed about that?

BERRY: No.

COURT: And you elected not to hire your own attorney, is that correct?

BERRY: Yes, sir.

COURT: And why is that?

BERRY: Well, the guy's lying; I'm just not going to pay money to have him get up there and lie.

COURT: But would you be able to pay money?

BERRY: Well I already have to one guy. I paid him what you'd uh—a good fee.

COURT: You paid who a good fee?

BERRY: I paid Michael Ruschell; he got paid for his fee—I guess $1000.

COURT: Okay, that was the public defender fee.

BERRY: I don't see any reason to hire an attorney.

COURT: Okay. I mean that was for the representation in that first indictment which covered four or five months, I suppose, or a little longer—in various hearings and various proceedings. But is it your decision that you don't feel that you need an attorney?

BERRY: Well, I'm sure it'd be nice to have one, but I'd rather go at it on my own.

COURT: But can you tell me why you'd rather go at it on your own—And I'm not trying to be difficult or disagreeable, I just want to know that I understand why you want to go at it on your own.

BERRY: Well, just like mining it's a exploratory business, you know, there's not a known, just like in law, it's exploratory, there's a set a rules, but there's not a known; it's exploratory.

. . . .

COURT: And if you were to hire an attorney—one question is—are you deciding not to have an attorney because you can't afford a lawyer or because you'd rather not—not have to pay that—I mean there are a lot of expenses in life that we would . . .

BERRY: . . . rather do without.

COURT: Well, we make decisions that "well, we're not going to do that," but it's a decision that's free and voluntary on our part when we decide to do that.

BERRY: Yes, I drive an old car, I worked on it; I mean, I don't hire a mechanic for it, you know, I do that; I really don't hire anybody to do anything; I mean, I tried that all on my own.

COURT: And that's fine. I mean the law allows that. The law allows you to represent yourself in a criminal case or a civil case. I suppose, and I can't exhaust all the possibilities, but in just about any legal matter, as long as you're representing yourself—you can do that. You can't represent others obviously but when it comes to dealing with your own life, whether it be in the context of the criminal or the civil law, as long as your doing it for your own self, you can do it. But you will be held accountable to the same standards as if you were a lawyer and you understand that?

BERRY: Exactly.

COURT: Just as when you're working on your car, the results will hold you to the same standards as a mechanic. . . . . And if you're not aware of all the rules as related to the particular law of this case then you could suffer the result. Is that something that you're willing to risk, or undergo?

BERRY: Yes.

COURT: I think I'm interpreting you correctly but tell me if I'm misinterpreting you that you could afford a lawyer if you wanted one; it's an expense you'd

just as soon not pay, but if you really wanted a lawyer you could afford one.

BERRY: Yes.

COURT: Okay. I have to make a finding, and we're leading up to that, that your decision to represent yourself is knowingly and voluntarily made.

BERRY: Yes.

COURT: And that's why, if your decision to represent yourself was "well, I can't afford a lawyer"—

BERRY: No, that's not the point; that's not the case.

COURT: Okay; and it has to be knowingly made; let's discuss a little bit about that; you're charged with assault in the second degree which is a C felony which the range of punishment for that is 5–10 years; you're also charged with being a first degree persistent felony offender and that means that you have two prior felony convictions . . . . . The significance of being charged as a persistent felony offender in the first degree is that if you're convicted of the felony assault at the C level then your range can go up to 10–20 years. And even if you're convicted of a lesser assault under extreme emotional disturbance, which would only be a D felony, the penalty could still be increased to 10–20 years. And the further significance of that is that if you're convicted of the C felony, as a PFO 1, then the range of punishment is 10–20 but you would have to serve 10 years before you would be eligible for parole—so you're not looking at an insignificant charge—you understand that . . .

BERRY: Yes, my lawyers gave me a frank and brutal discussion about that earlier.

COURT: Okay. And that's what lawyers should do. And I think even as recently as yesterday, didn't Mr. Ruschell have some conversation with you, not as your attorney but more in terms of friendship?

BERRY: He said they made me an offer of two years probate—*Alford* plea; that's all he said.

PROSECUTOR: There was no *Alford* plea—but there was a 2 year probation offer. Mr. Ruschell was going to counter with that . . . .

COURT: Okay, Mr. Ruschell was going to ask for an *Alford* plea—but that's close to what everything was; which raises this issue, at this point Mr. Masamoor, would that offer still be available?

PROSECUTOR: The plea would be; I would not agree to an *Alford* plea; we don't historically do that.

COURT: Which that means, Mr. Berry, which I'm sure you understand this, but I just want to make sure this is in the record and give you one final chance to consider that—the offer is probation which means that you walk out of here and don't have any time to serve—and two years—and that's compared to what conceivably you could get 20 years . . . . Ultimately you have to make the decision and hopefully it's an informed and thoughtful one and I can say that from experience, for good or bad, for the right reasons or the wrong reasons, criminal defendants usually when presented with an opportunity to walk away without serving any time usually take it—I mean I think that's a fair statement. . . .

BERRY: It's a sweet offer.

COURT: So, I just want you to make sure you understand that—that you have the opportunity still to walk away—although that's not completely correct in that you are limited by being on probation and you do have another felony conviction so I'm not saying that there are no consequences at all and I'm

not trying to get you to plead guilty I'm just wanting to make sure that you understand fully the proceedings and the options that you have; do you believe that you do?

BERRY: Yes.

COURT: Do you want anymore time to consider that?

BERRY: No, that's fine.

COURT: You want to proceed this morning with the trial?

BERRY: Yes.

 Given this exchange, unlike the one in *Hill v. Commonwealth,* 125 S.W.3d 221 (Ky.2004), we find that Berry's request to proceed *pro se* was unequivocal and that his decision was knowingly, intelligently and voluntarily made. We must keep in mind that our inquiry is whether Berry competently waived his right, not whether he was competent to represent himself. *Godinez,* 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321. "It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance." *Faretta,* 422 U.S. at 834. However, Berry's choice "must be honored out of 'that respect for the individual which is the lifeblood of the law,'" notwithstanding that he conducted his own defense, ultimately, to his detriment. *Id.* (citations omitted).

### IV. Jury Instructions

On appeal, Berry contends that the jury instructions were erroneous. Berry failed to preserve this issue for appeal and, considering the instructions in their entirety, we find no palpable error. Accordingly, there is no merit to this assignment of error.

The decision of the Court of Appeals is vacated. The judgment and sentence of the Hopkins Circuit Court are reinstated.

LAMBERT, C.J., COOPER, GRAVES, JOHNSTONE, SCOTT, and WINTERSHEIMER, J.J., concur.

KELLER, J., dissents because he believes that the trial judge failed to adequately explain the perils of proceeding pro se as required by Wilson v. Commonwealth, 836 S.W.2d 872, 881–84 (Ky.1992), and Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).