Neal Scott STONE, Appellant

v.

COMMONWEALTH OF KENTUCKY,
Appellee.

No. 2004–SC–000690–MR.

Supreme Court of Kentucky.

March 22, 2007.

Shannon Dupree, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, James Havey, Assistant Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

CUNNINGHAM, Justice.

Appellant, Neal Scott Stone, was convicted of trafficking in a controlled substance in the first degree by a Nelson County jury. He was sentenced to twenty years' imprisonment. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), raising five allegations of error. For the reasons set forth herein, we reverse.

### FACTS

In August 2001, Robert Delonjay was arrested for trafficking narcotics. Following the arrest, Detective Thomas Roby of the Bardstown Police Department recruited Delonjay to serve as a confidential informant for the Greater Hardin County Narcotics Task Force, to which Detective Roby had been assigned. In exchange for dismissal of the charge, Delonjay conducted nine transactions for the police.

On November 28, 2001, Delonjay contacted Detective Roby and informed him that he could purchase crack cocaine from Appellant, who lived in the apartment immediately next to his own in Bardstown. Detective Roby and a Task Force colleague, Detective Doug Clark, met Delonjay at a liquor store near his apartment complex that afternoon. The detectives showed a photograph of Appellant to Delonjay, who verified his identity. The detectives also gave Delonjay instructions not to leave with anyone, not to leave in a vehicle, and not to enter a residence. Delonjay departed the meeting with three marked twenty-dollar bills and a concealed cassette recorder.

Delonjay proceeded to a convenience store where he paged Appellant from a pay phone. Speaking in code, Delonjay and Appellant agreed to meet on Appellant's front porch. Detective Clark overheard Delonjay's portion of the telephone conversation from his surveillance car parked nearby. Delonjay then left for Appellant's apartment. When he arrived, he learned from Appellant's girlfriend that he was not yet home but on his way. Dean Stivers, another person with whom Delonjay had previously conducted a controlled buy, was also waiting for Appellant on the porch. Stivers offered to sell Delonjay a quantity of cocaine, but Delonjay declined. He waited for some time, then eventually departed.

Delonjay returned to the liquor store, where the detectives were waiting, and was instructed to return to Appellant's apartment. Appellant arrived shortly thereafter and met Appellant on his front porch. Delonjay told Appellant that he had cut his hand and needed some gauze. He then gave Appellant the marked sixty dollars, and went to the back of the apartment where Appellant met him with a rock of crack cocaine wrapped in paper towels.

Delonjay then returned to the liquor store and gave the cocaine to the detectives.

Appellant was later arrested. At trial, Appellant's primary theory of defense was that Delonjay had gone into his own apartment to get the cocaine. This theory rested on the fact that the apartment building was built at the bottom of a slight embankment, preventing the detectives from having an uninterrupted view of Delonjay. The jury ultimately convicted Appellant of trafficking in a controlled substance in the first degree. He was sentenced to twenty years' imprisonment. He now appeals to this Court as a matter of right.

*WAIVER OF REPRESENTATION*

Appellant represented himself at trial, with a public defender serving as standby counsel. He now challenges his waiver of representation on two grounds.

A recitation of the procedural history of Appellant's case is necessary to discussion of the alleged errors.

At his first arraignment on November 7, 2002, Appellant requested to represent himself until he could find an attorney. The request was granted, but the trial court did appoint Nancy Denton, a public defender, to advise Appellant during the arraignment. The trial court also scheduled a later hearing date to determine whether a public defender would be involved in the case on a permanent basis. Ms. Denton appeared at this later hearing and, upon questioning by the trial court, explained that it was not the practice of the public defender to act as standby counsel; she explained that Appellant could either request a public defender to represent him or he could proceed *pro se*. Presented with this choice, Appellant expressed his intention of proceeding *pro se*. The hearing was very brief, and no inquiry was made concerning Appellant's waiver of counsel as required by *Faretta v. Califor-*

*nia,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

Thereafter, Appellant represented himself at various hearings, including a hearing on a discovery motion, a hearing on a motion to dismiss a persistent felony offender count, and a suppression hearing. During this period, Appellant also filed several written motions on his behalf, including a motion to disclose the identity of the confidential informant, a motion to disclose exculpatory evidence, a motion to dismiss the indictment, and a motion for bond modification. Most importantly, he represented himself at a plea bargaining conference.

Later, on May 23, 2003, Appellant again inquired into the possibility of having standby counsel appointed. The trial court explained that if he wished to have an attorney appointed, his June 9, 2003 trial date would be postponed. Appellant elected to remain *pro se.* However, prior to the June trial date, Appellant was taken into federal custody and his case was abated for approximately six months. Following suppression of items seized from Appellant's home, the federal court dismissed the charges.

On January 27, 2004, Appellant filed a written "Motion for Court to Appoint Standby Counsel for Defendant." At the hearing on the matter, Appellant explained that he needed an attorney to advise him about criminal procedure and evidentiary rules. The trial judge agreed to appoint the public defender as standby counsel subject to further inquiry as to whether it would be permitted by the public defender agency. Again, no inquiry was made as to whether Appellant's decision was knowing, intelligent and voluntary.

At some point thereafter, the trial court apparently determined that a *Faretta* hearing relating to Appellant's now partial waiver of counsel was required. Finally, on May 21, 2004, just 20 days before trial and for the first time in the proceedings, a complete *Faretta* hearing was held. The trial court then concluded that Appellant's partial waiver of counsel was made knowingly, intelligently and voluntarily. Appellant was tried on June 10–11, 2004, with an appointed public defender assisting him as standby counsel.

■ Appellant now asserts two errors with respect to his waiver of representation. First, Appellant argues that reversible error occurred when the trial court denied him hybrid representation for thirteen months.[1] Additionally, Appellant argues that he was denied his right to counsel when the trial court failed to timely conduct a *Faretta* hearing to establish whether his waiver of representation was made knowingly, intelligently and voluntarily. It should be noted that Appellant does not challenge the sufficiency of the *Faretta* hearing that was ultimately held on May 21, 2004, nor does he argue that his waiver at the time was invalid.

■ Turning to the first portion of Appellant's argument, the trial court clearly erred by failing to inform the Appellant that hybrid representation was his right under Section Eleven of the Kentucky Constitution, a point which the Commonwealth concedes. *See Wake v. Barker,* 514 S.W.2d 692 (Ky.1974). Appellant's Sixth Amendment rights were not implicated in this error, however, as the federal Consti-

---

1. When a criminal defendant desires hybrid representation, he is making a limited waiver of counsel whereby he acts as co-counsel with a licensed attorney. The defendant specifies the extent of legal services he desires, but undertakes the remaining portion of his defense pro se. Counsel's duty to the defendant is thereafter limited to the extent of representation specified. *See Wake v. Barker,* 514 S.W.2d 692, 696 (Ky.1974).

tution does not similarly afford criminal defendants the right to act as co-counsel. *McKaskle v. Wiggins,* 465 U.S. 168, 183, 104 S.Ct. 944, 953–54, 79 L.Ed.2d 122 (1984); *see also Baucom v. Commonwealth,* 134 S.W.3d 591, 592 (2004). However, Appellant's Sixth Amendment rights were violated by the trial court's failure to hold a timely *Faretta* hearing. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Again, the Commonwealth agrees that the trial court should have conducted the *Faretta* hearing at the time Appellant originally waived his right to counsel, an omission that resulted in Appellant proceeding *pro se* without any determination as to the validity of his waiver of counsel.[2] When a trial court permits a criminal defendant to represent himself without the warnings required by *Faretta,* the Sixth Amendment right to counsel is violated. *See Hill v. Commonwealth,* 125 S.W.3d 221, 228–29 (Ky.2004).

The present case, however, is unique from other cases in which we have considered a criminal defendant's rights to representation and self-representation. Unlike previous cases, here, Appellant was afforded the representation he requested prior to trial. *See, id.* In fact, both Appellant and the Commonwealth also agree

that his waiver at the May 21st *Faretta* hearing was valid, and that co-counsel was appointed prior to trial. Accordingly, the correct inquiry in this case is whether Appellant's rights under the Sixth Amendment of the federal Constitution and Section Eleven of the Kentucky Constitution were violated by the thirteen-month period during which Appellant represented himself absent a valid waiver and notwithstanding his expressed desire for hybrid representation.

■ It is well-settled that a criminal defendant has a right to be represented by counsel that extends beyond the actual trial to every critical stage of the proceedings. *Henderson v. Commonwealth,* 396 S.W.2d 313 (Ky.1965); *see also United States v. Wade,* 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Conversely, the right to represent oneself is also embedded in the Sixth Amendment of the federal Constitution: "[T]he right to self-representation—to make one's defense personally—is thus necessarily implied by the structure of the Amendment." *Faretta v. California,* 422 U.S. at 819, 95 S.Ct. at 2533. Section Eleven of the Kentucky Constitution, extending further than the

---

**2.** We acknowledge that the federal courts are split as to the extent of *Faretta's* applicability in situations of a limited waiver of counsel, as a conflict of authority exists as to whether standby counsel satisfies the requirements of the Sixth Amendment. *See United States v. Cromer,* 389 F.3d 662, 680 (6th Cir.2004) ("There is conflicting authority on the issue of when *Faretta* warnings are required."); *Cf. U.S. v. Davis,* 269 F.3d 514, 520 (5th Cir. 2001) ("Standby assistance of counsel, however, does not satisfy the Sixth Amendment right to counsel."). However, we find those cases readily distinguishable based on the nature of Appellant's waiver of counsel. Here, though Appellant initially expressed his desire to receive hybrid representation, the trial court would permit only a total waiver of counsel or full representation. At that point,

Appellant determined he would continue pro se, and made the requisite clear and unequivocal assertion of his right to represent himself, thus triggering the trial court's duties under *Faretta.* Appellant's prior expressed desire for hybrid representation then became irrelevant. *Cf. Cromer,* 389 F.3d at 683 ("A defendant who seeks merely to supplement his counsel's representation, as Cromer did here, has failed to avail himself of his right to self-representation and thus failed to waive his right to the assistance of counsel."); *see also King v. Bobby,* 433 F.3d 483, 490 (6th Cir.2006) ("We need not weigh in on whether standby counsel's substantial assistance can satisfy a defendant's right to counsel because here, [standby counsel] did not participate in the case at all after he was designated as standby counsel.").

Sixth Amendment, recognizes the right of a criminal defendant not only to proceed *pro se,* but also to receive hybrid representation. *Wake,* 514 S.W.2d at 696.

■ Because Appellant was granted his desired representation prior to trial, the inquiry before this Court is whether Appellant was denied counsel at a critical stage of his prosecution. Courts have long struggled with a precise definition of what constitutes a "critical stage." *See Van v. Jones,* 475 F.3d 292 (6th Cir.2007). The U.S. Supreme Court has defined a 'critical stage' in various terms: "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial," *Wade,* 388 U.S. at 226, 87 S.Ct. at 1932; a "moment when available defenses may be irretrievably lost, if not then and there asserted," *Hamilton v. Alabama,* 368 U.S. 52, 54, 82 S.Ct. 157, 159, 7 L.Ed.2d 114 (1961); a period when counsel's attendance is necessary to "mount a meaningful defense," *Wade,* 388 U.S. at 225, 87 S.Ct. at 1931; a stage when "potential substantial prejudice to defendant's rights inheres in the ... confrontation and the ability of counsel to help avoid that prejudice," *Coleman v. Alabama,* 399 U.S. 1, 9, 90 S.Ct. 1999, 2003, 26 L.Ed.2d 387 (1970). Thus, an analysis of a critical stage necessarily involves a retrospective inquiry as to the nature and consequences of each step in the proceedings. Particular attention must be given to how counsel would have benefited the defendant at these moments. In other words, was there the likelihood that representation by counsel would have benefited Appellant?

■ The denial of counsel at a critical stage is not subject to harmless error analysis once a lawyer-less stage has been deemed as critical. "It is settled that a complete absence of counsel at a critical stage of a criminal proceeding is a *per se*

Sixth Amendment violation warranting reversal of a conviction, a sentence, or both, as applicable, without analysis for prejudice or harmless error." *Van,* 475 F.3d at 311–312. However, in determining whether a particular stage was critical, this Court must undertake an analysis that is similar to an inquiry for actual prejudice. The Sixth Circuit has explained:

> In order to assess if a given portion of a criminal proceeding is a critical stage, we must ask how likely it is that significant consequences might have resulted from the absence of counsel at the stage of the criminal proceeding... There must be a reasonable likelihood that such prejudice will arise from a complete absence of counsel.

*Van,* 475 F.3d at 313.

In light of the type of analysis upon review, trial courts should be governed by the caveat that any stage of a criminal prosecution, even the seemingly most perfunctory, can become a "critical stage." For this reason, criminal proceedings advance with great risk at every step if a defendant has not validly waived his or her right to counsel following a *Faretta* hearing.

Accordingly, we have reviewed the record in this case to determine whether a "reasonable likelihood" existed that Appellant was prejudiced by the complete lack of counsel for the thirteen-month period prior to the appointment of co-counsel. Appellant represented himself at the following pretrial proceedings: arraignment on an amended indictment, a hearing on a discovery motion and bill of particulars, a hearing on a motion to dismiss a persistent felony offender count, a hearing on a motion to suppress, two hearings on the Commonwealth's failure to comply with discovery orders, a pretrial conference involving two settlement offers, a hearing concerning potential KRE 404(b) evidence, and a

hearing on bond reduction. This Court has undertaken a very thorough and comprehensive review of the record in this case, giving particular attention to what occurred following the appointment of co-counsel and whether Appellant had the opportunity to revisit prior decisions of the trial court. *See Van*, 475 F.3d at 313 ("Perhaps the best way of reaching an answer to that query is to ask whether [the defendant] had any opportunity . . . to recover or exercise whatever privilege he lost.").

Upon careful review, we conclude that Appellant was denied counsel at several critical stages of the prosecution, in violation of his Sixth Amendment rights.

▄▄▄ In the instant case, the absence of counsel during a meeting with the Commonwealth's attorney to discuss two different plea agreements looms monumental. Prior to the appointment of standby counsel, the Commonwealth offered at least two plea agreements to Appellant. The Commonwealth first offered to amend the trafficking charge to a lesser offense with a sentence of "time served." The Commonwealth also offered to run Appellant's sentence concurrently with the then pending federal charges in exchange for a plea of guilty to trafficking in the first degree.[3] Appellant stated on the record that he rejected both offers and wished to proceed to trial. More important to the present analysis, there is no affirmative indication on the record that these plea offers were revisited following appointment of standby counsel.

▄▄▄ It is axiomatic that the advice of counsel is vitally important to a criminal defendant's understanding of a guilty plea agreement. The decision to accept or reject a plea offer necessarily involves an analysis of the charges, the nature and admissibility of the Commonwealth's evidence, and an accurate assessment of the defendant's actual guilt. "[A]n intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney." *Brady v. United States*, 397 U.S. 742, 748 n. 6, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). Recognizing the gravity of the decision to plead guilty, "[t]here is no doubt that a criminal defendant is entitled to representation by counsel in plea negotiations." *United States v. Sammons*, 918 F.2d 592, 602 (6th Cir.1990). Stated more specifically for our analysis, "plea negotiations, guilty plea hearings, and sentencing hearings are all 'critical stages' at which the right to counsel attaches." *King v. Bobby*, 433 F.3d 483, 490 (6th Cir.2006); *see also United States v. Akins*, 276 F.3d 1141, 1147 (9th Cir.2002) ("Nowhere is counsel more important than at a plea proceeding.").

It is indeed rare for any criminal prosecution not to involve some sort of plea-bargaining along the way. Arguably, when this happens it can be the most critical stage of the proceeding. As stated previously, it is in the negotiation of a criminal case where the learning and experience of legal counsel can prove most vital. The overwhelming majority of criminal cases are pled out. Our criminal justice system has arrived at a place where often the negotiating skills of a lawyer are more critical than his or her prowess in a courtroom.

When analyzed through the lens of Appellant's overall prosecution, we conclude that these plea negotiations were critical stages for purposes of the Sixth Amendment. Appellant rejected two favorable

---

**3.** As stated earlier, Appellant's federal charges were later dismissed following the federal court's suppression of several items seized at his apartment.

plea offers absent counsel's professional opinion as to the likelihood of a conviction before a jury. He was charged and convicted of trafficking in a controlled substance in the first degree (second offense), a class B felony which requires a penalty ranging from ten to twenty years' imprisonment. KRS 218A.1412; KRS 532.060(2)(b). Though the Commonwealth's attorney does indicate on the record that the charge would have been amended down to a lesser offense, it is unclear exactly what charges the Commonwealth contemplated. Furthermore, the Commonwealth offered to sentence Appellant to "time served" for this lesser offense. Appellant also rejected a plea offer that would have tied the charges to pending federal charges, which were later dismissed following suppression of vital evidence. It appears that following that critical plea agreement, the prosecution took the very attractive offer "off the table" and the record does not reflect that it ever resurfaced for a more knowing consideration by Appellant with counsel. Clearly, the consequences of this meeting were grave, as indicated by the fact that Appellant ultimately received a sentence of twenty years' imprisonment, the maximum sentence for a class B felony. Without any indication that these offers were revisited subsequent to appointment of standby counsel, we can only conclude that Appellant had no opportunity to "recover or exercise" the privilege he lost. *Van*, 475 F.3d at 313.

We are mindful of the Commonwealth's repeated assertions that Appellant, notwithstanding the wrongful denial of counsel for a lengthy period of time, was nonetheless afforded a fair trial. Coupled with Appellant's admission that standby counsel was effective at trial, there is a compelling argument that any error herein should be deemed harmless. However, for better or worse, we are bound by the U.S. Supreme Court's very clear dictates that the complete denial of counsel at a critical stage is reversible error *per se,* not subject to harmless error review. *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984).

For the foregoing reasons, we hold that Appellant was denied counsel at a critical stage of his prosecution, namely, the plea bargaining conference, in violation of his Sixth Amendment rights. Since our ruling turns on one particular event, we need not address whether any of the other hearings during the thirteen-month absence of counsel rise to the level of a critical stage.

Lastly, because they are unlikely to recur upon retrial, it is unnecessary to address Appellant's additional allegations of error. *Terry v. Commonwealth,* 153 S.W.3d 794, 797 (Ky.2005). Accordingly, the judgment of the Nelson Circuit Court is hereby reversed for further proceedings consistent with this opinion.

All concur.