RENDERED:  JUNE 21, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2023-CA-0237-MR

RICHIE MAYES                                                    APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE THOMAS L. TRAVIS, JUDGE
ACTION NO. 22-CR-00642

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND LAMBERT, JUDGES.

EASTON, JUDGE:  A jury found the Appellant, Richie Mayes ("Mayes"), guilty
of First-Degree Stalking and multiple related misdemeanor offenses.  Because
Mayes was a First-Degree Persistent Felony Offender (in part due to a prior
stalking conviction with the same victim), the circuit court sentenced Mayes to
serve fifteen years.  On appeal, Mayes argues the circuit court erred in denying his
last-minute request to act as hybrid counsel, erred in failing to excuse a juror for

cause, and erred in permitting Mayes to wear an identification bracelet for part of the first day of the trial. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A grand jury indicted Mayes for the felony of First-Degree Stalking with an additional count of Second-Degree Criminal Mischief, and nine[1] counts of Violation of a Stalking Restraining Order. The Indictment also included the charge of Mayes being a First-Degree Persistent Felony Offender.

Although represented from the beginning by the Department of Public Advocacy ("DPA"), Mayes filed numerous *pro se* motions and petitions for writs, two of which are of note. In one motion, Mayes demanded an evidentiary bond hearing and specifically instructed his attorney to subpoena the victim of the stalking charge so that he could question her. More to the point regarding the errors claimed, Mayes filed a written motion asking for a *Faretta*[2] hearing. This motion appears to have been dated August 2, 2022, by Mayes but was not filed by the court clerk until September 2, 2022. The one-page, handwritten motion does not state whether Mayes sought to act as his own counsel for all purposes or as

---

[1] Recognizing an issue raised by the defense about a specific date and the charge being addressed in prior court proceedings, the circuit court dismissed Count 7 prior to trial with the Commonwealth's agreement.

[2] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

hybrid counsel. In fact, there is no indication of it being any specific request about counsel other than the bare reference to *Faretta*.

Mayes' ultimately denied request for self-representation or hybrid counsel must be placed in context. At arraignment in July 2022, a DPA attorney noted that conflict counsel would be needed. Mayes then himself asked for his case to be dismissed, for a speedy trial (which he in fact received at his insistence despite his issues with appointed counsel), and to disqualify the prosecutor because the same prosecutor had been involved in his prior case.

The next appointed DPA conflict counsel discussed Mayes' case with him. Then, at a court appearance on October 5, 2022, Mayes explained that he "wrote up" this attorney because of how discovery had been handled. It appears the write up was a promptly dismissed bar complaint. Mayes insisted he no longer had any issue with this attorney. The attorney insisted on withdrawing anyway, which the court granted.

On November 10, 2022, Mayes appeared for the first time with another (now third) DPA attorney ("Fallahi"). Fallahi expressed concern about being prepared for the upcoming trial date. Mayes made it clear he wanted to proceed to trial as scheduled. When the court mentioned the prior *Faretta* motion, Mayes asked "is there any way to be hybrid counsel?" The court responded this was a possibility but encouraged Mayes to discuss his case with the new attorney

before making any such decision about hybrid counsel. Before this hearing ended, Mayes personally made further arguments about the charges in his case. The court then set a hearing to address any question of self-representation.

This next hearing took place on December 1, 2022. The court recalled the pending question of self-representation that Mayes "might have wanted . . . to represent himself in this case or at the upcoming trial." The court then listed some specifics by asking if Mayes wanted to make opening statements or closing arguments, question witnesses, and doing all the things a lawyer does.

Mayes clearly withdrew his request during this hearing. At no point did Mayes ask to readdress any level of self-representation during the remainder of this hearing, even when the Commonwealth withdrew its protective motion to prohibit Mayes from himself cross-examining the victim. Mayes, who never showed hesitance to speak up, listened as both his attorney and the court said the question about what Mayes might do at trial was now a moot point because the appointed attorney would be "carrying the ball entirely."

The trial date arrived. On the morning of December 12, 2022, before the seating of a jury, the court sought to address any pretrial matters. It should be noted that Mayes then had a fourth DPA attorney ("Alcorn") who was there as trial counsel with Fallahi. We do not see any specific complaint by Mayes about

Alcorn, who would be present with Mayes for the trial and post-trial proceedings, including sentencing.

Up to this point, the circuit judge had been remarkably patient with Mayes. The review of the overall record reveals that frustration was inevitable. Some frustration was revealed at the hearing before the jury was called in on the morning of trial. We have repeatedly reviewed this hearing between 8:37:54-9:02:30 on December 12, 2022.

Mayes immediately renewed his complaints about his DPA counsel, repeating his understanding that he should have "conflict" counsel, which to him meant attorneys completely unaffiliated with DPA. Mayes incorrectly referred to DPA as "the Legal Aid Department" and went on to list his lawsuits in the past against DPA. The circuit judge asked Mayes if he thought his conflict was with every DPA attorney in the state. Mayes responded that is what he understood. Fallahi and Alcorn then explained how they had been appointed and that they knew of no conflict.

The court asked Mayes about the prior discussion on December 1 when he decided he did not want to represent himself and asked whether he now wanted to represent himself to which Mayes responded: "I didn't exactly use those words." The circuit judge then said to Mayes: "it doesn't seem like you get along really well with anybody." The court denied Mayes request to dismiss the

appointed attorneys. Only then, within minutes of the jury coming in, did Mayes say: "can we make it hybrid counsel?" The court responded: "not today. . . it's too late." The Court also reminded Mayes of his decision on December 1 hearing: "we discussed that last week."

Mayes' attorneys explained to him how he could participate with them by letting them know what he wants them to do, including his ability to make and send notes. For the rest of the pre-trial hearing on the morning of trial, Mayes successfully had his counsel raise points he wanted to make. When Mayes asked about how certain evidence would be presented, the court told Mayes: "it's up to you and your attorneys to decide what sort of defense to put on." There was no renewal of the question about hybrid counsel or other self-representation during that hearing after which the jury came in for selection.

Subsequent events illustrated Mayes' continuing issues with not just the attorneys but also the court. We need not belabor this Opinion with a moment-by-moment account of Mayes' conduct. Suffice it to say that the circuit judge eventually had Mayes removed from the courtroom during a portion of the proceedings to prevent further interruption. Significantly, Mayes did not appeal this decision, which was clearly justified for the court to properly control the proceedings.

During jury selection, Juror 3140 was asked questions[3] about her serving as a juror for the case. She worked at the Fayette County Attorney's office dealing with child support cases. She knew who attorney Alcorn was and had worked with her. She knew nothing about Mayes or his victim as a result of her work. She has no part in domestic violence matters. She had graduated from law school and was preparing to take the bar exam, so she was not yet an attorney practicing with the county attorney. While her work did put her in a position to suggest jail time for some defendants who did not pay child support, her job was helping with enforcement of support orders generally. She thought of her job as only "semi-prosecutorial." The juror had no hesitation in expressing her ability to be impartial.

On the video, the defense attorneys seemed hesitant to make a motion to strike this juror. The judge did not immediately strike the juror but left the matter open for further consideration. Ultimately, the motion to strike was denied.

During the afternoon of the first day of trial, Mayes brought up that he was wearing a jail bracelet. Mindful of the quality of the video recording with respect to details, we see that the bracelet appears to be white. It can be seen

---

[3] The questions asked of this potential juror and the arguments about her qualification to serve appear at 10:05:59-10:12:52 and 11:50:35-11:52:45 on 12-12-22.

because Mayes was wearing a short-sleeved green and white striped shirt despite this being a mid-December trial.

Mayes lectured the court on RCr 8.28 and claimed the judge was not following the law because Mayes was not supposed to appear in "jail clothing." The judge responded that he had not noticed the bracelet, which was described as a jail identification bracelet. There is no indication that any juror had noticed or identified the bracelet as jail attire. The judge suggested Mayes could wear a long-sleeved shirt to cover it. The judge overruled Mayes' objection about the bracelet. The next day, Mayes brought it up again. Mayes did not have the bracelet on the next morning nor apparently for the rest of the trial.

## STANDARD OF REVIEW

The decisions for which Mayes seeks review are reviewed by this court for abuse of discretion. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1993). Misapplication of the law alone may result in an abuse of discretion. "[W]hen the issue presented involves a question of law, we review the question of law de novo." *Southern Financial Life Ins. Co. v. Combs*, 413 S.W.3d 921, 926 (Ky. 2013).

ANALYSIS

## MAYES' QUESTION ABOUT HYBRID COUNSEL WAS NOT AN UNEQUIVOCAL INVOCATION OF THE RIGHT

*Faretta* recognizes a federal constitutional right to self-representation but not hybrid counsel. The wording of the Kentucky Constitution protects both choices for a defendant as well as the option for a court to appoint standby counsel even against the defendant's wishes. *Wake v. Barker*, 514 S.W.2d 692, 696-97 (Ky. 1974). To request hybrid counsel requires a defendant to specify the extent of the services he wants. *Id*. at 696.

A failure to consider a proper request for hybrid counsel is a structural error, not subject to harmless error analysis. *Hill v. Commonwealth*, 125 S.W.3d 221, 228 (Ky. 2004). "However, hybrid representation may only be granted to a defendant who makes a timely and unequivocal request for such representation." *Deno v. Commonwealth*, 177 S.W.3d 753, 757 (Ky. 2005). To assess this question, we must consider "the circumstances under which the request was made." *Id*. at 758. Generally, a request for self-representation or hybrid counsel will be timely if made before jury selection. *Swan v. Commonwealth*, 384 S.W.3d 77, 94 (Ky. 2012).

Timeliness is subject to assessment of whether the demand is made for an improper purpose, such as delay. *Id*. Late invocation of the right cannot be used "as a ploy to frustrate the orderly procedures of a court in the administration

of justice." *Robards v. Rees*, 789 F.2d 379 (6th Cir. 1986) (quoting unpublished opinion of the Kentucky Supreme Court). A court may consider circumstances showing that a defendant has "flip-flopped" or had a previous "change of mind." *Horton v. Dugger*, 895 F.2d 714, 717 (11th Cir. 1990). A last minute request may not be used as "a ploy to plant the seed of trial error." *Id*. at 718 n.4.

"A waiver may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself." *Swan*, *supra*, at 94 (citation omitted). We recognize that, once a right is waived, there is no automatic right to assert the right again as is evidenced by that body of law which gives our trial courts discretion not to allow withdrawal of a voluntary guilty plea. *See, e.g.*, *Bronk v. Commonwealth*, 58 S.W.3d 482 (Ky. 2001). But even with a prior waiver, to some extent, a defendant should be able to change his mind about self-representation. The prior waiver simply enters into the equation of whether a later request is unequivocal. Accepting that the question posed by Mayes about hybrid counsel just before the jury came in was a technically timely invocation of the right, we ultimately conclude his request was not unequivocal.

If something is unequivocal, it leaves no doubt. There is no deliberate evasiveness. Mayes' initial written demand did not specify self-representation or hybrid counsel. Mayes knew about the option for hybrid counsel before the hearing on December 1, 2022. Yet he allowed the withdrawal of his motion. Even

-10-

when he again changed his mind, Mayes did not specify what he wanted to do instead of counsel and just asked a question about hybrid counsel generally. When considering all the circumstances, we cannot say that the circuit court abused its discretion by not allowing last-minute consideration of Mayes' hybrid counsel question. Mayes' later behavior also would illustrate how his actions were part of an ongoing effort to frustrate the orderly procedures of the court.

THE CIRCUIT COURT DID NOT ERR BY
NOT STRIKING THE JUROR FOR CAUSE

Mayes' counsel properly preserved the objection to the circuit court's denial of the motion to strike Juror 3140 for cause. *Gabbard v. Commonwealth*, 297 S.W.3d 844, 854 (Ky. 2009). RCr 9.36(1) calls for removal if there "is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict . . . ." Recent cases emphasize the breadth of the "reasonable ground to believe" aspect of this standard. *Sturgeon v. Commonwealth*, 521 S.W.3d 189, 194-95 (Ky. 2017). But this does not change the more absolute verb used in the standard of "cannot" be fair and impartial.

As we have previously recounted, Juror 3140 worked in the local county attorney's office. She handled child support cases. She knew nothing of Mayes or his victim. While this juror may become an attorney, she was not one at the time of this trial. Mayes' argument speaks of the juror's "semi-prosecutorial" role as disqualifying.

-11-

Mere connection with law enforcement alone does not disqualify. *Smith v. Commonwealth*, 734 S.W.2d 437, 444 (Ky. 1987). For this reason, our courts have held that a former secretarial employee of the prosecutor is not automatically disqualified. *Id.* at 445. If a juror is a *current* secretary for the Commonwealth's Attorney, then bias is assumed. *Randolph v. Commonwealth*, 716 S.W.2d 253, 255 (Ky. 1986).

We have recognized other circumstances where an implied bias should be acknowledged to disqualify a juror. An assistant county attorney who worked with attorneys in the Commonwealth's Attorney's office and was a personal friend of the trial judge is disqualified. *Farris v. Commonwealth*, 836 S.W.2d 451, 455 (Ky. 1992), *overruled on other grounds by Commonwealth v. Day*, 983 S.W.2d 505 (Ky. 1999). An assistant county attorney who actually participated in the initial presentation of the case on trial is disqualified. *Godsey v. Commonwealth*, 661 S.W.2d 2, 4-5 (Ky. App. 1983).

When we consider the entirety of what Juror 3140 said in this case, we cannot say that she crossed the line into any implied bias. We should not extend automatic dismissal criteria any more than absolutely necessary. The circuit court did not abuse its discretion in denying the motion to strike Juror 3140.

## WEARING OF JAIL BRACELET DURING FIRST
## DAY OF TRIAL DID NOT VIOLATE RCR 8.28

The final contention of error is about the jail bracelet. RCr 8.28(5) provides: "During his or her appearance in court before a jury the defendant shall not be required to wear the distinctive clothing of a prisoner. Except for good cause shown the judge shall not permit the defendant to be seen by the jury in shackles or other devices for physical restraint." We find it curious (if not suspicious) that Mayes was ready to recite this particular rule on the first day of trial while wearing a short-sleeved shirt and the bracelet which obviously was not required as shown by its later removal.

Mayes did not show that he was "required" to wear the bracelet during the trial. Indeed, he was not wearing it the next trial day. Nor is that bracelet "distinctive *clothing* of a prisoner." *See Scrivener v. Commonwealth*, 539 S.W.2d 291 (Ky. 1976). There is no indication that any juror noticed the bracelet with the jurors seated across the room. The circuit judge had not noticed it. There is no showing that anyone other than those in close proximity to Mayes could have read anything on the bracelet indicating anything about the jail.

Cases from around the country establish that the wearing of a jail bracelet in these circumstances does not present any error by the trial court, and, even if there was any error, harmless error analysis may be applied. *See United States v. Alsop*, 12 Fed. Appx. 253 (6th Cir. 2001); *Kansas v. Ward*, 495 P.3d 414

(Kan. Ct. App. 2021) (unpublished); *Brown v. Indiana*, 848 N.E.2d 699 (Ind. App. 2006), *affirmed on rehearing*, 856 N.E.2d 739 (Ind. App. 2006), *vacated on other grounds*, 868 N.E.2d 464 (Ind. 2007); *Perry v. Alabama*, 741 So.2d 467 (Ala. App. 1999). With the overwhelming evidence against Mayes, any error about the jail bracelet, which we do not find, would have been harmless.

CONCLUSION

The circuit court committed no errors in the denial of Mayes' equivocal and repeated question about hybrid counsel on the morning of trial, the denial of the motion to strike Juror 3140, or the wearing of a jail bracelet during the first day of trial. The Fayette Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Roy Alyette Durham II
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky