Roy Lee SCOTT, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Supreme Court of Kentucky.

Nov. 15, 1984.

Rehearing Denied Feb. 28, 1985.

David L. Yewell, David C. Condon, Rummage, Kamuf, Yewell & Pace, Owensboro, for appellant.

David L. Armstrong, Atty. Gen., Robert W. Hensley, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

Roy Lee Scott was convicted of murder and sentenced to forty years' imprisonment. He appeals as a matter of right. We reverse.

The remains of Scott's wife, Joyce Scott, were found in a sinkhole on the Scott farm in March 1983. Joyce Scott had disappeared in July 1982. A trial resulted in the conviction of Scott for murder.

Scott asserts four errors in the trial.

■ First Scott asserts that the Commonwealth violated his right to due process by destroying evidence.

As background to this assertion, Scott was arrested on March 8 or 9, and on March 16, his attorney filed a motion in the trial court for an order permitting Scott to have an independent examination of the body. The motion was set for hearing on March 23.

On March 9, a Dr. Wolfe, the state forensic anthropologist, went to the sinkhole where the body was discovered and made a preliminary examination of the body and adjacent area. The body was then sent from Bowling Green to Louisville for a complete forensic examination. After the examination was completed, the body was released to a family member and was cremated on March 23. There is no suggestion of bad faith on the part of the Commonwealth's attorney. The coroner was not notified of the request and had no reason to delay the release of the body. We are of the opinion that in the circum-

stances presented here there is no reversible error. If there was a duty to notify the coroner before the hearing, it was borne equally by Scott's lawyer. The motion to suppress the testimony of Dr. Wolfe was properly overruled.

In addition it is clear that an abundance of evidence remained available. Scott claims the identity of the victim, cause of death and time of death could only be proven by the body. In the course of Dr. Wolfe's testimony, he introduced slides showing the sinkhole, condition of the body, entrance and exit wounds and single buckshot wounds. X-rays were introduced from which dental records were compared to identify Joyce Scott. X-rays were further introduced showing buckshot in the skull and other areas of the body.

The time of death, summer of 1982, was determined by insect larvae which are present only in the summer. A can containing some larvae was introduced into evidence.

A buckshot found under a decomposed part of the body was introduced into evidence. There was an extensive forensic report. Scott would be in far better position to argue his point if he had an expert examine the material introduced as exhibits to determine if anything else was needed for an independent examination. This would be a preferable posture to the theoretical argument presented by Scott, assuming that all evidence had been destroyed.

The principal basis of examination of Dr. Wolfe by Scott's trial counsel appeared to be an inquiry as to Dr. Wolfe's opinion as to whether the nightgown worn by the body was suitable for summer weather.

■ Second Scott asserts the trial court erroneously permitted evidence of other crimes into testimony.

There was testimony that a license plate, discovered buried about eighteen inches above the body of Joyce Scott, was registered to a stolen van. There was other testimony that a van brought in by Scott from out-of-state was the stolen van to

which the license plate belonged and the van was registered in Scott's name.

We are of the opinion the testimony was proper. The fact that the van was stolen was incidental to the other testimony which tended to place Scott at the burial site and to furnish a motive for burying the license plate.

■ Next Scott asserts improper testimony about sexual misconduct with his daughter and stepdaughter. We are of the opinion this testimony was improper and should have been excluded. The Commonwealth argues motive. The difficulty with this argument is that the record does not show that Joyce Scott had any knowledge of this alleged misconduct, and thus no motive could be imputed to Scott. This testimony was highly prejudicial and was erroneously admitted into evidence.

■ Finally the most egregious error, the Commonwealth was permitted to introduce testimony of various instances of falsehoods told by Scott. In effect, the Commonwealth attacked his reputation for truth and veracity. This testimony was introduced in chief and was doubly damned for Scott did not take the witness stand and thus put his reputation for truth and veracity in issue.

■ We should not be required to restate so ancient a rule. This rule was stated in *McDonald v. Commonwealth*, 86 Ky. 10, 4 S.W. 687, 688 (1887), as follows:

"The appellant offered himself as a witness, and, being examined, his general character for truth and veracity was impeached by the state. The undoubted and general rule in criminal practice is that the state cannot place the character of the accused in issue, unless the latter shall have first attempted to establish his character by proof. This rule is founded in sound policy, and prevents those charged with crime from being punished because of their bad character, rather than on the testimony adduced as to their guilt of the particular offense charged. Nor has this rule been repealed, expressly or by implication, by reason of the

statute permitting the accused to testify on his own behalf. When he comes before the jury as a witness, although charged with the offense, he subjects himself to that character of examination that can be made of any other witness; and his inclination to tell the truth, or to swear falsely, may be shown by the commonwealth in the usual mode of impeaching the general character of a witness for truth and veracity."

The rule is restated in *Fry v. Commonwealth*, 259 Ky. 337, 82 S.W.2d 431, 440 (1935), and noted in *Buchanan v. Commonwealth*, 304 Ky. 225, 200 S.W.2d 459 (1947), that the rule is codified in the *Civil Code of Practice* § 597. This has been carried forward to CR 43.07, permitting impeachment by evidence that in general reputation for untruthfulness renders him unworthy of belief.

The major premise is, of course, that the party has first taken the witness stand and testified, thus putting his veracity in issue as any other witness.

■ We are of the opinion these last two errors are so prejudicial in the circumstances of this case that Scott is entitled to a new trial.

The other assignments of error do not merit comment.

The judgment is reversed with directions that Scott be granted a new trial.

STEPHENS, C.J., and AKER, GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents and files a dissenting opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent from so much of the majority opinion as finds that the Commonwealth committed no error when it permitted the victim's body to be destroyed while the defendant's motion for an independent examination of the body was pending.

At the time defense counsel moved the court for permission to examine the body,

and noticed the Commonwealth Attorney accordingly, the body was in the custody of the State Forensic Anthropologist, Dr. David Wolfe. There is no question but that, upon receipt of the motion, the Commonwealth Attorney could have notified Dr. Wolfe to hold the body, which would have prevented destruction of the evidence.

It is no answer to say that, "if there was a duty to notify the coroner before the hearing [on the motion], it was borne equally by Scott's lawyer." Majority Opinion, p. 185. The Commonwealth, through its officials, had both possession and control of the body. There is no doubt in my mind but that state officials would respect a request from the Commonwealth Attorney to hold the body pending a decision on the defense's motion. On the other hand, there is no reason to suspect that defense counsel had access to information as to location of the body, or, if he did, any authority to control its disposition.

The testimony at trial from the state's forensic anthropologist, which went unchallenged, was the principal evidence against the defendant. His testimony identified the body, established that the victim was killed by two shots from a shotgun, and placed the time of death in the summer of 1982, consistent with the time of her disappearance. Both the time of death and the weapon and the ammunition which were used to kill her were important evidence open to question on independent examination of the body.

Thus the Commonwealth destroyed important, material evidence, and denied the defendant the right to conduct tests in his own defense. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and a host of other cases hold that where the prosecution "witholds evidence on demand of an accused which, if made available, would [or might] tend to exculpate him or reduce the penalty," such is a violation of due process. 373 U.S. at 87–88, 83 S.Ct. at 1196–1197.

The issue is not whether the appellant can prove that an independent examination of the body would have produced evidence favorable to the appellant. The principle which we should apply here is thus stated in *Stipp v. State*, Fla.App., 371 So.2d 712, 713 (1979):

> "It is wrong for the state to unnecessarily destroy the most critical inculpatory evidence in its case against an accused and then to be allowed to introduce essentially irrefutable testimony of the most damaging nature against the accused."

Unfortunately, were we to exclude the evidence from the state's forensic anthropologist, the remaining evidence falls far short of a submissible case. The Commonwealth concedes that without this evidence, it has no case. Thus, a proper disposition in the circumstances is not only to reverse and remand for a new trial because of trial errors, as ordered by the Majority Opinion, but to reverse and dismiss.