**COMMONWEALTH of Kentucky, Appellant**

v.

**William AYERS, Appellee.**

**No. 2012–SC–000261–DG.**

Supreme Court of Kentucky.

Nov. 21, 2013.

Rehearing Denied Feb. 20, 2014.

Jack Conway, Attorney General, Kenneth Wayne Riggs, Assistant Attorney General, Counsel for Appellant.

Kyle Anthony Burden, Louisville, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

Appellee, William Ayers, was an attorney licensed in Kentucky with extensive experience in the practice of criminal law. However, such knowledge appears remiss from his professional and personal choices. On April 10, 2008, a Jefferson County grand jury indicted Ayers on five counts of failure to file Kentucky tax returns for the years 2002–2006.

For the nearly two-year period between indictment and trial, Ayers appeared on his own behalf without expressing a desire for counsel until the day before a previously continued jury trial was scheduled to begin. Only at this delinquent date did Ayers request yet another continuance for the stated purpose of possibly retaining private counsel, which was overruled by the trial judge. Prior to any proof being presented at trial, the court noted the difference between typical pro se proceedings and this case, in which the defendant is an experienced criminal trial attorney and well-versed in evidence and court rules. However, no formal *Faretta* hearing was ever conducted at any stage of the trial court proceedings. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). At trial, evidence was presented that Ayers used his fiduciary status to launder money through clients' bank accounts. Most damning, he perpetuated his scheme through the misuse of his status as power of attorney for his client Robert Miller, a homeless man.

A Jefferson Circuit Court jury found Ayers guilty of five counts of failing to file a state tax return and recommended a sentence of three years on each count, to run concurrently. The trial court then sentenced Ayers in accord with the jury's recommendation. The Court of Appeals reversed the conviction and we granted discretionary review. The sole issue on appeal is whether the trial court's failure to conduct a *Faretta* hearing requires us to set aside Ayers' conviction and order a new trial. After reviewing the record and the law, we reverse the decision of the Court of Appeals and reinstate Ayers' conviction.

### Faretta *Hearing*

■ At the time of his conviction, Ayers had practiced criminal defense law in the Commonwealth for over fifteen years. It is undisputed that Ayers was a well-known criminal defense attorney who regularly practiced in the very court in which he was

tried and convicted. In fact, over two-hundred pages of records from the Administrative Office of the Courts detailing Ayers' appearances as counsel in criminal cases were admitted into evidence. Taken in this context, we refuse to sustain Ayers' rigid interpretation of our prior decisions requiring a *Faretta* hearing. Any result to the contrary would have us sanction a legal formalism over reality. "Common sense," as spoken so eloquently by former Chief Justice John Palmore, "must not be a stranger in the house of the law." *Cantrell v. Kentucky Unemployment Ins. Comm'n*, 450 S.W.2d 235, 237 (Ky.1970). Under the unique facts of this case, we hold that Ayers was not entitled to a *Faretta* hearing.

■■■ "The Sixth Amendment to the United States Constitution and Section Eleven of the Kentucky Constitution guarantee criminal defendants the right to counsel[.]" *King v. Commonwealth*, 374 S.W.3d 281, 290 (Ky.2012). Additionally, a defendant has a constitutional right to proceed without counsel when the defendant knowingly and intelligently elects to do so. *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525. This directive is well-established in the Commonwealth. *See, e.g., Depp v. Commonwealth*, 278 S.W.3d 615, 619 (Ky.2009); *Grady v. Commonwealth*, 325 S.W.3d 333, 342 (Ky.2010). Although our prior decisions prove instructive, a closer look at the purpose of *Faretta* is dispositive of our decision in the present case.

The right of a criminal defendant to proceed without counsel is not a textual directive of the Sixth Amendment, but is rather a judicial interpretation. In so holding, *Faretta* has created a Janus-faced quandary for trial judges. They must look in two directions at once. They must avoid erroneously denying the defendant the right to proceed without counsel. And at the same time, they must avoid errone-ously concluding that the defendant has effectively waived his right to counsel. *See Martinez v. Court of Appeal of California*, 528 U.S. 152, 164, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) ("[J]udges closer to the firing line have sometimes expressed dismay about the practical consequences of [*Faretta* ].") (Breyer, J., concurring); *see also United States v. Farhad*, 190 F.3d 1097, 1107 (9th Cir.1999). Such difficulty in navigating the Sixth Amendment's dueling rights has often forced courts, including this one, to walk a fine line. Appearing to recognize this conflict, the Supreme Court has offered only tepid support for *Faretta* in its more recent opinions. For example, in *Martinez*, the Court held that there is no constitutional right to proceed without counsel on appeal. In arriving at this conclusion, the wisdom of *Faretta* was called into question. *Martinez*, 528 U.S. 152 at 161, 120 S.Ct. 684 ("No one ... attempts to argue that as a rule *pro se* representation is wise, desirable, or efficient."). The majority specifically cast doubt on *Faretta's* strong reliance on the colonial and pre-colonial English legal traditions as sufficient justification. *Id.* at 156–57, 120 S.Ct. 684.

No matter the historical underpinnings upon which this seminal case was decided, "*Faretta* applies only where a defendant ... foregoes the benefits associated with the right to counsel." *United States v. Leggett*, 81 F.3d 220, 224 (D.C.Cir.1996). A *Faretta* hearing was unnecessary in the present case because Ayers was not exercising his right to proceed without a lawyer. As an attorney, Ayers never forewent the benefits of counsel. There was a lawyer and a defendant who, in this case, were uniquely one and the same. The analogy of "hybrid representation" proves instructive.

■■■ Kentucky is within the minority of jurisdictions that recognize a criminal

defendant's right to make a limited waiver of counsel and accept representation in certain matters. *Wake v. Barker*, 514 S.W.2d 692 (Ky.1974) (citing Ky. Const. § 11) ("[T]here is no valid basis for interpreting ['by himself and counsel'] as meaning that the only right guaranteed is to appear with counsel."). This limited waiver is sometimes known as "hybrid representation" and requires trial courts to conduct a *Faretta* hearing to determine whether the waiver is made knowingly, voluntarily, and intelligently. *Hill v. Commonwealth*, 125 S.W.3d 221, 226 (Ky.2004) (overruled on other grounds by *Grady v. Commonwealth*, 325 S.W.3d 333 (Ky. 2010)). In contrast, the majority of federal and state courts hold that there is no constitutional right to hybrid representation. *See, e.g., McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *United States v. Mosely*, 810 F.2d 93, 97–98 (6th Cir.1987). Accordingly, most trial courts permit hybrid representation only as a "matter of grace." *State v. Melson*, 638 S.W.2d 342, 359 (Tenn.1982). Since our predecessor Court has recognized the right to hybrid representation, primarily under our own Kentucky Constitution, we may construe such matters, either directly or by analogy, with greater constitutional latitude than if we were strictly beholden to a federal directive. *Peters v. Commonwealth* is one such example. No. 97–SC–000316–MR (Ky., Feb. 19, 1998) (unpublished).

In *Peters*, we held that *Faretta* warnings were unnecessary because the defendant received hybrid representation and therefore was never without the assistance of counsel. *Peters, id.* After an appeal from a habeas corpus petition, the United States Court of Appeals for the Sixth Circuit agreed, noting that no Supreme Court precedent clearly requires *Faretta* warnings in these circumstances. *Peters v.*

*Chandler*, 292 Fed.Appx. 453, 457–58 (6th Cir.2008) (unpublished).

Similarly, in *Metcalf v. State*, a case in which hybrid representation had been granted, the Supreme Court of Mississippi stated that since the defendant "was never without the advice and expertise of his attorney ... there was no need for a waiver instruction." 629 So.2d 558, 566 (Miss. 1993). The Court held that waiver was not even an issue, "[r]egardless of how we label the representation [the defendant] received[.]" *Id.*

Further, in *People v. Lindsey*, the Illinois appellate court held that the defendant had not waived counsel in a manner required by the Illinois rule of procedure. 17 Ill.App.3d 137, 308 N.E.2d 111, 115 (1974). Instead, the court found that the trial judge had utilized his discretion in granting the defendant "the best of both worlds: freedom to conduct his own defense and benefit from the assistance of counsel." *Id.* Other jurisdictions have arrived at a similar conclusion. *See, e.g., United States v. Cromer*, 389 F.3d 662, 680 (6th Cir.2004); *Phillips v. State*, 604 S.W.2d 904, 908 (Tex.Crim.App.1979). Most notably, the above-cited hybrid representation cases all involve non-lawyer defendants. Yet, these courts still held that, under the circumstances, *Faretta* did not apply. Therefore, this logic applies to the present case with even greater force because Ayers was himself an attorney. Thus, from indictment through sentencing, Ayers was never without the benefit of counsel—an experienced criminal counsel no less.

Moreover, requiring the trial court to obtain a waiver of counsel in this case would have been a vain and idle endeavor. *Faretta* protections were intended to educate people who are not aware of the benefits of counsel. Clearly, this is not the case here. *See Depp*, 278 S.W.3d at 619

("[t]o the extent [Kentucky case law] purports to require a rigid, formulaic review of waiver of counsel, it is modified to comport with common sense.").

We fully recognize that our holding here today is somewhat conflicting with other jurisdictions. Some apply *Faretta* in cases involving defendants who are attorneys, as well as defendants with enhanced legal knowledge. *See, e.g., Butler v. State,* 767 So.2d 534 (Fla.Dist.Ct.App.2000); *U.S. v. Maldonado–Rivera,* 922 F.2d 934 (2nd Cir. 1990); *Neal v. State of Texas,* 870 F.2d 312 (5th Cir.1989); *U.S. v. Campbell,* 874 F.2d 838 (1st Cir.1989). While these courts purport to apply *Faretta* (most likely out of an abundance of caution), they apply a bare minimum standard based on the defendants' superior legal acumen. *See Iowa v. Tovar,* 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (recognizing a pragmatic approach to *Faretta* inquiries based on "case specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding").

Unlike other jurisdictions, we dispense with the charade of combing the record for some shred of evidence that *Faretta* was satisfied. Instead of reducing the standard for a *Faretta* inquiry to an unrecognizable level, we expand this reasoning to its logical and more appropriate end.

Lastly, *Faretta* does not address the quality of counsel. Its requirements are not invoked when a defendant is represented by a callow and inexperienced lawyer fresh from the bar exam. It would seem to be a glaring incongruity to invoke its requirements when a capable and experienced criminal lawyer is representing himself. Allowing Ayers to avail himself of *Faretta* protections would offend the very purpose and integrity of *Faretta* and its progeny.

Therefore, we hold that criminal defendants who are experienced criminal trial attorneys are not entitled to a *Faretta* hearing or inquiry prior to representing themselves. This holding is not intended to disturb our prior decisions relating to various forms of hybrid representation as applied to non-attorneys.

### Conclusion

For the foregoing reasons, we reverse the Court of Appeals and reinstate the Jefferson Circuit Court's judgment.

All sitting. All concur.