# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JUNE 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0083-MR

KEITHYON NELSON                                          APPELLANT

V.                  ON APPEAL FROM CLARK CIRCUIT COURT
HONORABLE DAVID M. WARD, JUDGE
NO. 22-CR-00221

COMMONWEALTH OF KENTUCKY               APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Keithyon Nelson was convicted in Clark Circuit Court following a jury trial of two counts of unlawful transaction with a minor, two counts of rape in the third degree, and being a persistent felony offender in the first degree (PFO I). He received a sentence of twenty-five years' imprisonment and now appeals as a matter of right.[1] Nelson raises three allegations of error in seeking reversal. First, he asserts the trial court erred in failing to hold a *Faretta*[2] hearing prior to permitting him to represent himself at the suppression hearing. Second, he contends he was unduly prejudiced by the Commonwealth's cross-examination of him. Finally, he argues the trial court

---

[1] KY. CONST. §110(2)(b).

[2] *Faretta v. California,* 422 U.S. 806 (1975).

erred in failing to instruct the jury using the defense's proffered "Presumption of Innocence" instruction. Following a careful review, we affirm.

In August 2020, fifteen-year-old R.A.[3] started visiting the apartment of her boyfriend's brother almost daily. R.A. met other people around the apartment building, including Nelson, who went by the nickname "Kilo." Nelson was on house arrest and recruited R.A. to work for him selling drugs. R.A. did so for a few days, selling methamphetamine, marijuana, cocaine, and various prescription medications. Nelson paid her $5.00 for each sale she completed. After her first sale of methamphetamine, Nelson taught R.A. about the drug, prepared her some, and gave it to her to try. She continued using methamphetamine for the next four days and tried to stay "constantly high" so she would not feel ill. During this period, R.A. did not go home but spent the majority of her time in Nelson's apartment. While staying there, R.A. and Nelson engaged in sexual intercourse on four occasions.

Upset by the events, R.A.'s boyfriend contacted her mother. R.A. had lied to her parents about her whereabouts, telling them she was staying with her boyfriend at his brother's apartment. Her parents had previously filed a missing person's report believing she was a runaway, but when they learned where she was, they went to get her from Nelson's apartment. After R.A. returned home and her parents learned more about what she had been doing, the matter was referred to Detective John Larette of the Winchester Police

---

[3] We use initials to protect the privacy of the minor victim. *See* Kentucky Rules of Appellate Procedure (RAP) 31(B).

Department. In the course of the subsequent investigation, Nelson gave a voluntary interview. During the recorded interview, Nelson admitted he was 28 years old, and he had engaged in sexual intercourse on one occasion with R.A. even though he was aware she was only 15. He confirmed he was a convicted felon and was on house arrest but denied being a drug dealer. Nelson confirmed he used the nickname "Kilo Diamonds" on social media.

Based on the results of the investigation, Nelson was indicted on two counts each of unlawful transaction with a minor in the first degree and rape in the third degree, as well as being a PFO I. Prior to trial, Nelson filed a pro se motion to suppress his interview, claiming his confession was coerced. Following a hearing, the trial court denied the motion and the matter proceeded to trial. The jury convicted him on all counts and the trial court sentenced him in accordance with the recommended sentence of twenty-five years' imprisonment. This appeal followed.

First, Nelson contends it was error for the trial court to permit him to represent himself at the hearing on his pro se suppression motion without first conducting a *Faretta* hearing. He claims he was inadequately advised about the dangers and disadvantages of representing himself and therefore could not have knowingly, intelligently, and voluntarily waived his right to counsel. Nelson asserts the trial court's failure constituted a violation of his right to counsel under the Sixth Amendment to the United States Constitution. We disagree.

3

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. *Gideon v. Wainwright*, 372 U.S. 335 (1963); *Strickland v. Washington*, 466 U.S. 668 (1984). In *Faretta*, the United States Supreme Court held that implicit in that guarantee is the correlating right of a defendant to waive counsel and to conduct his own defense. 422 U.S. at 806. Section 11 of the Kentucky Constitution also guarantees a defendant the right to counsel and provides the right to proceed pro se, but further permits a partial waiver of counsel known as hybrid representation. *Hill v. Commonwealth*, 125 S.W.3d 221, 225-26 (Ky. 2004).

Any request to dispense with counsel, in whole or in part, must be made "in a timely and unequivocal fashion." *Swan v. Commonwealth*, 384 S.W.3d 77, 93 (Ky. 2012) (citing *Major v. Commonwealth*, 275 S.W.3d 706, 719 (Ky. 2009)). We require such a clear and unmistakable request

> [b]ecause in the vast majority of cases a defendant's due process right to a fair trial will be better protected if the defendant proceeds with counsel's assistance rather than without it, under both constitutions a defendant is presumed to desire that assistance unless and until he unambiguously indicates otherwise. *Faretta*, 422 U.S. at 806, 95 S.Ct. 2525; *Hill*, 125 S.W.3d at 221. Once he does so, the trial court is then obliged to conduct a hearing to ensure that any waiver of the defendant's right to counsel is both knowing and voluntary. *Commonwealth v. Terry*, 295 S.W.3d 819 (Ky. 2009) (citing *Faretta* and noting with approval the federal courts' model list of questions to be posed to would-be *pro se* defendants).

> While it may be that to invoke his *pro se* right, initially, and to trigger the trial court's duty to inquire and to warn, a defendant's request to dispense with counsel "need not be punctilious," *United States v. Proctor*, 166 F.3d 396, 403 (1st Cir. 1999), it must, nevertheless, be sufficiently clear and unambiguous "that no reasonable person can say that the request was not made." *Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir. 1986). It is not enough for a defendant merely to express

4

dissatisfaction with counsel, *United States v. Martin*, 25 F.3d 293 (6th Cir. 1994), to demand new counsel, *Fields v. Murray*, 49 F.3d 1024 (4th Cir. 1995); *Deno v. Commonwealth*, 177 S.W.3d 753 (Ky. 2005), to "fire" one's counsel, *United States v. Long*, 597 F.3d 720 (5th Cir. 2010), or to lodge *pro se* motions, *United States v. Miles*, 572 F.3d 832 (10th Cir. 2009); *Winstead v. Commonwealth*, 283 S.W.3d 678 (Ky. 2009). Nor is it enough merely to supplement or to seek to supplement counsel's representation. *United States v. Cromer*, 389 F.3d 662 (6th Cir. 2004). The defendant, rather, must clearly indicate that he desires to dispense with counsel's services in whole or in part and to substitute himself for counsel. After all, where the defendant does not to any extent seek to waive counsel, there can be no need to warn him against the perils of waiver. *United States v. Leggett*, 81 F.3d 220 (D.C.Cir. 1996); *Matthews v. Commonwealth*, 168 S.W.3d 14 (Ky. 2005).

*Commonwealth v. Martin*, 410 S.W.3d 119, 122-23 (Ky. 2013).

Our review of the record reveals there was no unequivocal request for Nelson to proceed pro se or to act as hybrid counsel. Nelson filed a pro se suppression motion and wrote at least two letters to the judge in which he expressed dissatisfaction with appointed counsel. At a pretrial hearing, defense counsel indicated it would not be joining in Nelson's suppression motion, stating the belief it would not have been an appropriate motion for him to have filed.[4] Counsel suggested to the trial court he was unsure whether convening a *Faretta* hearing would be appropriate. The trial court scheduled the suppression hearing and indicated it would "inquire" of Nelson before the hearing began, noting that, at worst, defense counsel would act in an advisory role. Additionally, the trial court informed Nelson of the hearing date, advised him to discuss any questions with counsel before that time, and explained why

---

[4] We note counsel fully represented Nelson throughout the proceedings, including trial, save this singular motion.

counsel had not joined the suppression motion. Nelson was also told he would be expected to follow the same rules as an attorney.

At the suppression hearing, however, no mention was made of conducting any sort of *Faretta* hearing and the trial court did not inquire about Nelson's desire to represent himself. The Commonwealth called Det. Larette, asked him several questions, and introduced Nelson's recorded interview. Afterwards, Nelson cross-examined the detective with counsel offering assistance throughout, and the trial court's order denying the suppression motion noted the same.

The invocation of the right to represent oneself "does not set into motion rigid, mechanical procedures that must be followed to the letter to avoid an error." *Swan*, 384 S.W.3d at 94. In *Swan*, we further explained that "[t]he invocation of the right and whether the proper procedures were followed must be evaluated in the context of a given case. Otherwise, any hint of an invocation of the right, even if immediately withdrawn, would require a *Faretta* hearing. But the law does not require such empty process." *Id.* at 94-95. Here, the issue was raised at a pretrial hearing and the judge deferred any further action, thereby placing the burden on Nelson to raise it again at the appropriate time. He did not. Instead, he stood silent as the trial court convened the suppression hearing and, by doing so,

> removed the need to hold a *Faretta* hearing, since such a hearing is
> required only in the face of an active request to so proceed. To
> hold otherwise would allow the fabrication of reversible error . . .
> after a passed request to proceed pro se or with hybrid
> counsel. *See* [*People v.*] *Kenner*, 223 Cal.App.3d [56,] 62, 272

6

Cal.Rptr. 551 [(Cal. Ct. App. 1990)] ("One interpretation of this record is that appellant realized that the trial court forgot the *Faretta* motion in the confusion resulting from his custody situation, and slyly saved his *Faretta* ace to play triumphantly on appeal. The record does not clearly establish any such cunning strategy; however, if it did, the gamesmanship should not be rewarded.").

*Id.* at 95. Nelson simply did not make a timely and unequivocal request to proceed pro se or with hybrid counsel, and any possible indication of his desire to do so was abandoned by his subsequent actions, or inaction, at the suppression hearing. Thus, the trial court did not err in failing to conduct a *Faretta* hearing. There was no violation of Nelson's constitutional rights to counsel, to proceed pro se, or to proceed with hybrid counsel.

Next, Nelson asserts the Commonwealth's cross-examination of him at trial amounted to an improper character attack which unduly prejudiced him. During the Commonwealth's cross-examination, two lines of questioning drew defense objections, one regarding how many children Nelson had and the other concerning how he paid for his home incarceration. Both objections were overruled after the trial court concluded the evidence was relevant under KRE[5] 401. Between the objections, the Commonwealth elicited testimony that Nelson's nickname was Kilo, he was a convicted felon, he was unemployed in August 2020, he had six children but paid no child support, he did not pay rent, and he did not have a cellphone of his own. No objection was lodged to this testimony. Nelson now argues the Commonwealth was improperly

---

[5] Kentucky Rules of Evidence.

7

permitted to introduce irrelevant and unduly prejudicial character evidence which served only to paint him in a bad light before the jury. The Commonwealth contends the cross-examination was proper and the testimony was relevant and correctly admitted.

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. Under KRE 402, "[a]ll relevant evidence is admissible" unless otherwise excluded by the law or our rules of evidence. "Evidence which is not relevant is not admissible." *Id.* However, even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403. Unduly prejudicial evidence has been defined as evidence which "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case[.]" *Richmond v. Commonwealth,* 534 S.W.3d 228, 232 (Ky. 2017) (quoting *Butler v. Commonwealth,* 367 S.W.3d 609, 615 (Ky. App. 2012)). "The prejudice must go beyond that which is merely detrimental to a party's case and be of such character that it 'produces an emotional response that inflames the passions of the triers of fact or is used for an improper purpose.'" *Kelly v. Commonwealth,* 655 S.W.3d 154, 165 (Ky. 2022) (quoting *Leach v. Commonwealth,* 571 S.W.3d

8

550, 554 (Ky. 2019)). Conversely, there also exists "the equally venerable rule that a defendant may not be convicted on the basis of low character or criminal predisposition, *even though* such character or predisposition makes it appear more likely that the defendant is guilty of the charged offense." *Billings v. Commonwealth*, 843 S.W.2d 890, 892 (Ky. 1992). Thus, under KRE 404(b), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence may be admissible, however, "[i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." KRE 404(b)(1). On appeal, we review the trial court's decision to admit such evidence for abuse of discretion. *Harp v. Commonwealth*, 266 S.W.3d 813, 822 (Ky. 2008).

> When a defendant elects to testify at trial, 'he subjects himself to that character of examination that can be made of any other witness; and his inclination to tell the truth, or to swear falsely, may be shown by the commonwealth in the usual mode of impeaching the general character of a witness for truth and veracity.'

*Rucker v. Commonwealth*, 521 S.W.3d 562, 571 (Ky. 2017) (quoting *Scott v. Commonwealth*, 685 S.W.2d 184, 186 (Ky. 1984)). "It is essential, therefore, to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth." *United States v. Havens*, 446 U.S. 620, 626-27 (1980).

Under the Commonwealth's theory of the case, Nelson induced R.A. to sell drugs for him because he was on home incarceration and could not leave

9

the area in close proximity to his apartment. The Commonwealth also believed Nelson dealt drugs to generate income to cover his basic living expenses. Before Nelson took the stand, the jury had already heard much of the evidence he now claims was unduly prejudicial. R.A. testified without objection that his nickname was Kilo, he sold drugs, she trafficked drugs for him, he had no job, and was on house arrest. During his interview which was played for the jury, Nelson admitted he did not have a phone and that he used the nickname "Kilo Diamonds" on social media. Thus, much of the cross-examination was cumulative and could have very little, if any, additional prejudicial effect. Further, questions regarding Nelson's living arrangements, financial obligations, and apparent lack of any legitimate sources of income were relevant to the Commonwealth's theory he was a drug trafficker.

The thrust of the Commonwealth's cross-examination was not to show Nelson was of "low character" or criminally predisposed. *Billings*, 843 S.W.2d at 892. The challenged evidence was not of the sort which would appeal to the jury's sympathy, arouse a sense of horror, or provoke the instinct to punish so as to be deemed unduly prejudicial. *Richmond*, 534 S.W.3d at 232. None of the questioning was used for an improper purpose, nor would it have produced an emotional response or inflamed the jurors' passions. *Kelly*, 655 S.W.3d at 165. It met the low standard of relevance as "[t]his standard is powerfully inclusionary and is met upon a showing of minimal probativeness." *Roe v. Commonwealth*, 493 S.W.3d 814, 820 (Ky. 2015). "Broad discretion is given to the trial court in determining the admissibility of evidence[.]" *Page v.*

10

*Commonwealth*, 149 S.W.3d 416, 420 (Ky. 2004). Absent a clear abuse of that discretion, reversal is unwarranted. *Id.* We discern no such abuse by the trial court in permitting the Commonwealth's cross-examination.

Finally, Nelson contends the trial court should have given the jury the "Presumption of Innocence" instruction tendered by the defense. We evaluate a trial court's instructional decisions on specific claims for an abuse of discretion, while the substantive content of the instructions is reviewed de novo. *Hargroves v. Commonwealth*, 615 S.W.3d 1, 6 (Ky. 2021) (citations omitted). A trial court abuses its discretion when it acts arbitrarily, unreasonably, unfairly, or in a manner that is "unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). We discern no instructional error and no abuse of discretion.

Nelson tendered a proposed jury instruction on the presumption of innocence which included a sentence clarifying that the Commonwealth bore the burden of proof throughout the trial. The trial court's instruction was nearly identical to Nelson's tendered instruction, except it omitted the reference to the burden of proof.[6] Nelson admits the Commonwealth noted in voir dire and the defense stated in opening remarks that the Commonwealth bore the burden of proof. However, he asserts the Commonwealth's cross-examination

---

[6] The sentence omitted from Nelson's tendered instruction read: "The burden of establishing guilt beyond a reasonable doubt as to each charge rests upon the Commonwealth from the beginning to the end of the trial."

11

of him attempted to shift the burden so the jury should have been reminded of the correct standard in the instructions. We disagree.

In *Daniel v. Commonwealth*, this Court rejected a similar instructional challenge, holding it "entirely unreasonable to believe that a juror, without benefit of a burden of proof instruction, could conclude other than it is for the Commonwealth to bear this obligation." 607 S.W.3d 626, 643 (Ky. 2020) (quoting *Patterson v. Commonwealth*, 630 S.W.2d 73, 75 (Ky. App. 1981)). The instruction given in that case was almost identical to the one given here. As in *Daniel*, the jury here was told on multiple occasions who bore the burden of proof on each charge. "It is therefore untenable that the jury did not know that the Commonwealth bore the burden of proof absent [the] proposed instruction." *Id.* at 644. The trial court did not abuse its discretion.

For the foregoing reasons, the judgment and sentence of the Clark Circuit Court is affirmed.

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, and Nickell, JJ., concur. Keller, J., dissents by separate opinion in which Thompson, J., joins.

KELLER, J., DISSENTING: I respectfully dissent. I would hold that the trial court's failure to ascertain whether Nelson had voluntarily, knowingly, and intelligently waived his right to counsel before permitting him to represent himself during a critical stage of his criminal proceedings violated his Sixth Amendment rights.

"The 'Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings.'" *Missouri v. Frye,*

12

566 U.S. 134, 140 (2012) (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). There is no "precise and comprehensive" definition of what constitutes a "critical stage" for purposes of the Sixth Amendment right to counsel, *Commonwealth v. Tigue*, 459 S.W.3d 372, 383 (Ky. 2015), but the Supreme Court of the United States has most recently epitomized that critical stages are those that hold "significant consequences for the accused." *Woods v. Donald*, 575 U.S. 312, 315 (2015) (quoting *Bell v. Cone*, 535 U.S. 685, 696 (2002)). This Court has comparably characterized the term "critical stage" as encompassing "those circumstances in which 'the accused must find himself confronted, just as at trial, by the procedural system, or by his expert adversary, or by both.'" *Downs v. Commonwealth*, 620 S.W.3d 604, 611–12 (Ky. 2020) (quoting *Cain v. Abramson*, 220 S.W.3d 276, 280 (Ky. 2007)). This Court has predominantly approached the task of determining what constitutes a "critical stage" with a formalistic or categorical approach. *See Tigue*, 459 S.W.3d at 384 (holding that a prejudgment motion to withdraw a guilty plea is always a critical stage of a defendant's criminal proceedings); *see also Stone v. Commonwealth*, 217 S.W.3d 233, 238 (Ky. 2007). By way of example, this Court has previously categorically treated plea negotiations, guilty plea hearings, plea withdrawal hearings, and sentencing hearings as among the "critical stages" of the defendant's criminal proceedings. *Stone*, 217 S.W.3d at 239; *Tigue*, 459 S.W.3d at 384.

13

While this Court has not yet had formal occasion to categorize pretrial suppression hearings as being a "critical stage,"[7] it is evident that the Sixth Amendment right to counsel must attach during such proceedings because the question of whether incriminating evidence is admissible at trial "might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Wade*, 388 U.S. 218, 224 (1967). In this regard, a pretrial suppression hearing holds "significant consequences for the accused." *Woods*, 575 U.S. at 315. And when the accused is denied the assistance of counsel at a pretrial suppression hearing, he is forced to stand alone and attempt to avoid any significant consequences to his defense while "confronted . . . by his expert adversary" the Commonwealth. *Downs,* 620 S.W.3d at 611.

Here, the object of Nelson's pretrial suppression hearing was to determine the admissibility of his prior confession to police, a confession wherein he made incriminating statements indicating that he had engaged in sexual intercourse with R.A. "if not once, no more than twice." Obviously, this evidence was valuable to the Commonwealth's prosecution and detrimental to Nelson's defense. Therefore, I would conclude that Nelson had a constitutional right to the assistance of counsel at his pretrial suppression hearing—a right he invariably maintained unless otherwise waived.

---

[7] Numerous other jurisdictions have declared that pretrial suppression hearings are a "critical stage" of the defendant's criminal proceedings. *See, e.g., United States v. Hamilton,* 391 F.3d 1066, 1070 (9th Cir. 2004); *Henderson v. Frank,* 155 F.3d 159, 166 (3d Cir. 1998); *Shaw v. State,* 835 S.E.2d 279, 291 (Ga. 2019); *Commonwealth v. Holzer,* 389 A.2d 101, 107 (Pa. 1978); *Vazquez Diaz v. Commonwealth,* 167 N.E.3d 822, 841 (Mass. 2021).

While a defendant has a Sixth Amendment right to the assistance of counsel at all critical stages of his criminal proceedings, implicit in that right is the defendant's "correlative" right to self-representation, *i.e.*, the "right to waive counsel and to conduct his or her own defense." *Commonwealth v. Martin*, 410 S.W.3d 119, 122 (Ky. 2013) (citing *Faretta v. California*, 422 U.S. 806 (1975)). A defendant's "relinquishment" of the right to counsel, however, must be "voluntary, knowing, and intelligent." *Montejo*, 556 U.S. at 786. Accordingly, when a defendant invokes his right to self-representation, the Constitution imposes an affirmative duty on the trial court to hold a "hearing" wherein the "defendant seeking self-representation [is] 'made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" *Commonwealth v. Terry*, 295 S.W.3d 819, 822 (Ky. 2009) (quoting *Faretta,* 422 U.S. at 835).

While mandatory, the necessary colloquy between the trial court and the defendant is not subject to "rigid" and "formulaic" requirements. *Depp v. Commonwealth*, 278 S.W.3d 615, 619 (Ky. 2009). The trial court "need not follow a script," nor must it employ any "magic words." *Terry*, 295 S.W.3d at 820-22; *Grady v. Commonwealth*, 325 S.W.3d 333, 342 (Ky. 2010). Indeed, "[t]he information a defendant must possess in order to make an intelligent election [to proceed without counsel] . . . will depend on a range of *case-specific* factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Iowa v.*

15

*Tovar*, 541 U.S. 77, 88 (2004) (emphasis added). At a minimum, however, the record must bear that the defendant has been "warned specifically of the hazards ahead." *Terry*, 295 S.W.3d at 822 (quoting *Tovar*, 541 U.S. at 89). Further, while not strictly required, it is always "preferable" that the trial court make "express findings . . . on the record" that the defendant has waived his right to counsel voluntarily, knowingly, and intelligently. *Depp*, 278 S.W.3d at 619.

The right to counsel and the right to self-representation have been "described as 'two faces of the same coin,' in that the waiver of one right constitutes a correlative assertion of the other." *United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970) (quoting *United States v. Plattner*, 330 F.2d 271, 276 (2d Cir.1964)). Accordingly, the practical implications of the *Faretta* hearing requirement create a "Janus-faced quandary for trial judges." *Commonwealth v. Ayers*, 435 S.W.3d 625, 627 (Ky. 2013). "They must avoid erroneously denying the defendant the right to proceed without counsel. And at the same time, they must avoid erroneously concluding that the defendant has effectively waived his right to counsel." *Id.*

While the Majority is correct that a trial court is not obligated to conduct a *Faretta* hearing when a defendant fails to "timely and unequivocal[ly]" invoke his right to self-representation, *Swan v. Commonwealth*, 384 S.W.3d 77, 93 (Ky. 2012), the Majority opinion fails to recognize that the act of exercising one's right to self-representation (*e.g.*, engaging in the cross-examination of a witness) is itself an unequivocal invocation of that right. Indeed, while the trial

16

court's affirmative duties under *Faretta* are most often triggered by a defendant's preliminary "request" to proceed *pro se*, *Swan*, 384 S.W.3d at 93, the trial court's duty to inquire and warn is ultimately triggered anytime the defendant "clearly indicate[s]" his desire to "substitute himself for counsel." *Martin*, 410 S.W.3d at 123. How that indication manifests itself (*e.g.*, by written or verbal request or by the defendant's affirmative action) is immaterial. Rather, what is material is that the trial court is on notice that the defendant intends to represent himself. And what more could a defendant do to clearly convey that intention than appear before the court and personally cross-examine a witness? Even if a defendant had been utterly silent up until that moment in time, the sight of a defendant personally examining a witness should immediately alert the trial court of its duty to conduct a *Faretta* hearing.

Accordingly, the overarching rule is that "[w]hen a trial court permits a criminal defendant to represent himself without the warnings required by *Faretta*, the Sixth Amendment right to counsel is violated." *Stone*, 217 S.W.3d at 237. A trial court's failure to conduct a constitutionally "adequate[]" *Faretta* hearing—or any *Faretta* hearing at all for that matter—amounts to a "structural" error necessitating reversal. *Hill v. Commonwealth*, 125 S.W.3d 221, 228–29 (Ky. 2004). As a result, we "need not determine whether [that] error is harmless." *Id.* at 228.

Here, the record demonstrates that the trial court failed to inquire into whether Nelson was voluntarily, knowingly, and intelligently waiving his right

17

to the assistance of counsel before it permitted him to represent himself at his pretrial suppression hearing. After Nelson filed his *pro se* motion to suppress his recorded interview with police, the trial court preliminarily discussed that motion with the parties on the record during a pretrial hearing as follows:

> **Trial Court**: Mr. Nelson had filed a pro se motion to suppress, and in that he's made allegations concerning a confession, that that was the result of coercion. So, unless you tell me otherwise, it is my intention to set a hearing date on that motion.
>
> **Defense Counsel**: Judge, I think that is appropriate . . . . Also I just want to raise the issue that as I'm not joining that motion I didn't know if it would be appropriate to do a *Faretta* hearing for him to represent himself in that action or how the court wanted to address that. I just wanted to raise those issues, so we can think about them now.
>
> **Trial Court**: I'm going to set the suppression hearing date. I can inquire . . . . Let me understand Mr. Gabehart [Defense Counsel]. He's filed a motion where he's saying that the confession that was obtained was coerced, and what you're saying is that despite you being assigned to represent him, you don't intend to represent him in that suppression hearing?
>
> **Defense Counsel**: Judge, I don't believe it's an appropriate motion for me to file. That's about as far as I'm willing to go on that.
>
> **Trial Court**: Alright. Well, given that it's in the record, and given the nature of the motion that's been made, the appropriate thing to do is to go ahead and set the suppression hearing. We were holding a date. I'll inquire of him [Nelson] immediately before the suppression hearing. At the very worst, you're going to be in the position of advisory counsel during that hearing.
>
> . . . .
>
> **Trial Court**: Alright sir [Nelson], your motion to suppress we're going to have a hearing on that on October 20 at noon. And then we will go from there. Now, you're already set for a trial by jury on November 13. Now, depending upon the outcome of that suppression hearing— I don't know if that's the sole evidence, usually not, but that may have some impact on that—you should expect to proceed to trial on November 13, alright. But you'll be back here in court on the

18

suppression hearing on October 20 at noon, and you should discuss with Mr. Gabehart [Defense Counsel] any questions that you have, because what he is saying is that he doesn't believe that he is in a position to be able to file a motion to suppress. A lawyer can't file a motion that they don't believe that there are sufficient grounds to file. Now, arguing about something at trial is different than arguing about something pretrial at a suppression hearing. So, it's expected that should you wind up representing yourself that you're going to have to obey the same rules that I would expect an attorney to follow. Do you understand? Alright. OK. Well, I'll give you an opportunity to present that on October 20, 2023, at noon. And understand that it's the Commonwealth's obligation to show . . . why it was a valid confession, and they will bear the initial burden on that. Do you understand? Alright. I just wanted to be clear about that.

Despite indicating that it would "inquire" of Nelson "immediately before the suppression hearing" the trial court did not speak directly with Nelson on the record prior to his suppression hearing on October 20, 2023. Rather, the trial court proceeded to conduct an evidentiary hearing on Nelson's motion, with the Commonwealth calling the first, and only, witness: Detective John Larette. The Commonwealth examined Detective Larette about the circumstances surrounding Nelson's confession to police and introduced Nelson's recorded interview into evidence. After the Commonwealth completed its direct examination, Nelson began to cross-examine Detective Larette himself. If the trial court was not already apprised that Nelson intended to represent himself during the suppression hearing, it was at that moment— when Nelson unequivocally invoked his right to self-representation and began to act as his own counsel—that the trial court should have held a *Faretta* hearing. However, there is no indication that the trial court ever warned Nelson of the "dangers and disadvantages" of exercising his right to self-representation. *Terry*, 295 S.W.3d at 822 (quoting *Faretta*, 422 U.S. at 835).

19

The trial court's earlier statement to Nelson that he would have to "obey the same rules" as an attorney should he "wind up representing [himself]" was insufficient to constitute an adequate *Faretta* hearing.

I note today, as Chief Justice Minton did in *Terry*, that the time constraints placed on our trial courts are great. To assist them in meeting their obligations under *Faretta*, we have previously endorsed a fifteen-step *Faretta* inquiry used by the federal courts. *See Terry*, 295 S.W.3d at 824–25. I present that line of questioning again today—not because each of these questions are required by the Constitution—but as a reminder that "a proper *Faretta* hearing can be brief enough to consume only a few minutes of a trial court's time." *Id.* at 825.

> (a) Have you ever studied law?
> (b) Have you ever represented yourself or any other defendant in a criminal action?
> (c) You realize, do you not, that you are charged with these crimes: (Here state the crimes with which the defendant is charged.)
> (d) You realize, do you not, that if you are found guilty of the crime charged in Count I the court ... could sentence you to as much as ____ years in prison and fine you as much as ____ $____?
> (Then ask [the defendant] a similar question with respect to each other crime with which he may be charged in the indictment or information.)
> (e) You realize, do you not, that if you are found guilty of more than one of those crimes[,] this court can order that the sentences be served consecutively, that is, one after another?
> (f) You realize, do you not, that if you represent yourself, you are on your own? I cannot tell you how you should try your case or even advise you as to how to try your case.
> (g) Are you familiar with the [Kentucky] Rules of Evidence?
> (h) You realize, do you not, that the [Kentucky] Rules of Evidence govern what evidence may or may not be introduced at trial and, in representing yourself, you must abide by those rules?
> (i) Are you familiar with the [Kentucky] Rules of Criminal Procedure?

(j) You realize, do you not, that those rules govern the way in which a criminal action is tried … ?

(k) You realize, do you not, that if you decide to take the witness stand, you must present your testimony by asking questions of yourself? You cannot just take the stand and tell your story. You must proceed question by question through your testimony.

(l ) (Then say to the defendant something to this effect):

I must advise you that in my opinion[,] you would be far better defended by a trained lawyer than you can be by yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. I would strongly urge you not to try to represent yourself.

(m) Now, in light of the penalty that you might suffer if you are found guilty and in light of all of the difficulties of representing yourself, is it still your desire to represent yourself and to give up your right to be represented by a lawyer?

(n) Is your decision entirely voluntary on your part?

(o) If the answers to the two preceding questions are in the affirmative, [and in your opinion, the waiver of counsel is knowing, intelligent, and voluntary,] you should then say something to the following effect:

"I find that the defendant has knowingly [, intelligently,] and voluntarily waived his right to counsel. I will therefore permit him to represent himself."

I would conclude that the trial court violated Nelson's Sixth Amendment rights when it permitted him to represent himself without the requisite *Faretta* warnings. *Stone,* 217 S.W.3d at 237. Pursuant to our precedent, the trial court's "structural" error necessitates that we reverse Nelson's conviction. *Hill,* 125 S.W.3d at 228–29. Accordingly, I dissent.

Thompson, J., joins.

21

COUNSEL FOR APPELLANT:

Molly Mattingly
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General